UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF FLORIDA

PLAINSCAPITAL BANK,

        Plaintiff,

vs.                                                  No. _____

ROBERT L. CHRISTENSEN,

        Defendant.

_____/

### COMPLAINT

        Plaintiff PlainsCapital Bank, sues Defendant Robert L. Christensen, and alleges as follows:

### Parties

        1.  Plaintiff PlainsCapital Bank ("PlainsCapital") is a state banking association, organized and existing as a Texas corporation under §§ 32.001(a), (c) and 32.008 of the Texas Finance Code, with its principal place of business located at 2323 Victory Avenue, Dallas, Texas 75219.

        2.  Defendant Robert L. Christensen ("Robert Christensen") is an individual who resides in Walton County, Florida.

**Jurisdiction and Venue**

3.   Jurisdiction exists under 28 U.S.C. § 1332 as the parties are citizens of different states and the amount in controversy exceeds $75,000.00.

4.   Venue is proper in the Northern District of Florida, as the Defendant resides in the district.

**Facts**

5.   On or about May 21, 2007, Miracle Strip, LLC  executed and delivered to PlainsCapital a promissory note in the original principal amount of $3,213,161.00 (the "Miracle Strip Note").  A true and correct copy of the Miracle Strip Note is attached hereto as Exhibit A and is incorporated herein by reference.

6.   The Miracle Strip Note was endorsed by Miracle Strip on or about May 21, 2007.

7.   On or about May 21, 2007, Miracle Strip executed and delivered to PlainsCapital a mortgage encumbering certain real property located in Orange County, Florida, and securing payment of the Miracle Strip Note, which mortgage is recorded in Official Records Volume 9317, Page 1580 of the current public records of Orange County, Florida (the "Mortgage").  A true and correct copy of the Mortgage is attached hereto as Exhibit B and is incorporated herein by reference.

8.   On or about November 21, 2007, the Miracle Strip Note and the Mortgage were modified by that certain Notice of Mortgage and Note Modification and Renewal Agreement recorded in Official Records Volume 9563, page 1474 of the current Public

Records of Orange County, Florida (the "First Renewal"). A true and correct copy of the First Renewal is attached hereto as Exhibit C and is incorporated herein by reference.

9. On or about May 21, 2008, the Miracle Strip Note and the Mortgage were modified by that certain Second Notice of Mortgage and Note Modification and Renewal Agreement recorded in Official Records Volume 9728, page 5936 of the current Public Records of Orange County, Florida (the "Second Renewal"). A true and correct copy of the Second Renewal is attached hereto as Exhibit D and is incorporated herein by reference.

10. On or about July 21, 2008, the Miracle Strip Note and the Mortgage were modified by that certain Third Notice of Mortgage and Note Modification and Renewal Agreement recorded in Official Records Volume 9767, page 2983 of the current Public Records of Orange County, Florida (the "Third Renewal"). A true and correct copy of the Third Renewal is attached hereto as Exhibit E and is incorporated herein by reference.

11. On or about September 21, 2008, the Miracle Strip Note and the Mortgage were modified by that certain Fourth Notice of Mortgage and Note Modification and Renewal Agreement recorded in Official Records Volume 9799, page 7583 of the current Public Records of Orange County, Florida (the "Fourth Renewal"). A true and correct copy of the Fourth Renewal is attached hereto as Exhibit F and is incorporated herein by reference.

12. On or about March 12, 2009, the Miracle Strip Note and the Mortgage were modified by that certain Fifth Notice of Mortgage and Note Modification and Renewal Agreement recorded in Official Records Volume 9841, page 8362 of the current Public

3

Records of Orange County, Florida (the "Fifth Renewal"). A true and correct copy of the Fifth Renewal is attached hereto as Exhibit G and is incorporated herein by reference.

13. On or about May 29, 2009, the Miracle Strip Note and the Mortgage were modified by that certain Sixth Notice of Mortgage and Note Modification and Renewal Agreement recorded in Official Records Volume 9896, page 0844 of the current Public Records of Orange County, Florida (the "Sixth Renewal"). A true and correct copy of the Sixth Renewal is attached hereto as Exhibit H and is incorporated herein by reference.

14. The Miracle Strip Note and Mortgage, as modified, went into default by reason of the failure of Miracle Strip or anyone acting on its behalf a) to make the full payment due on January 21, 2009 under the Miracle Strip Note as renewed or any subsequent payments and b) the failure of Miracle Strip or anyone acting on its behalf to pay the ad valorem property taxes due for 2008.

15. Pursuant to the Miracle Strip Note executed on May 21, 2007, and subsequent renewals, Robert Christensen executed a personal guaranty under which he personally and unconditionally guaranteed and assured the full, prompt and complete performance of Miracle Strip under the Miracle Strip Note. A true and correct copy of the Guaranty is attached hereto as Exhibit I and incorporated hereby by reference.

16. A Final Judgment of Mortgage Foreclosure was entered on April 19, 2010, foreclosing the Mortgage and adjudicating the amount due PlainsCapital in the total sum of $2,065,125.53, which sum constitutes the guaranteed indebtedness pursuant to the

4

terms of the Guaranty. A true and correct copy of that Final Judgment is attached hereto as Exhibit J and incorporated herein by reference.

17. Pursuant to the Final Judgment of Mortgage Foreclosure, the subject property was sold to the Plaintiff, upon a bid of $100.00, at public sale on May 24, 2010. The Certificate of Title is attached hereto as Exhibit K.

18. On or about December 20, 2010, PlainsCapital sold the subject property to Yatinkumar Patel for the sum of $1,625,000.00.

19. PlainsCapital notified Robert Christensen of Miracle Strip's default under the Miracle Strip Note and the Final Judgment of Foreclosure, and made demand on Robert Christensen for payment of the sums due under the terms of the Miracle Strip Note, but Robert Christensen has failed to pay such sums to PlainsCapital.

20. Robert Christensen owes PlainsCapital the difference between the sales price of the subject property when sold to Yatinkumar Patel and the total amount of the Final Judgment, together with interest, PlainsCapital's attorney's fees incurred and costs, pursuant to the Guaranty.

21. All conditions precedent to the commencement of this action by PlainsCapital have been performed, have occurred or have been waived.

22. PlainsCapital Bank has employed Taylor, Day, Currie, Boyd & Johnson as its attorneys herein and has agreed to pay such counsel a reasonable fee for their services.

**WHEREFORE**, Plaintiff PlainsCapital Bank demands judgment in its favor and against Defendant Robert L. Christensen for damages together with the costs of this action, its reasonable attorneys' fees, and interest thereon.

**TAYLOR, DAY, CURRIE, BOYD & JOHNSON**

Reed W. Grimm
Florida Bar No. 602353
50 North Laura Street, Suite 3500
Jacksonville, Florida  32202
(904) 356-0700
(904) 356-3224 (Facsimile)
Attorneys for Plaintiff PlainsCapital Bank

PlainsCapital Bank Loan # 1839109



### Promissory Note

**$3,213,161.00**          **Dallas, Texas**          May 21, 2007

    **Payment.**   For Value Received, the undersigned, **Miracle Strip, L.L.C.** ("Maker") hereby **promises to pay to the order of PlainsCapital Bank** ("Payee"), at its offices at 18111 Preston Road, Suite 220, Dallas, Texas 75252, in lawful money of the United States of America, the principal sum of Three Million Two Hundred Thirteen Thousand One Hundred Sixty-One and 00/100 Dollars (**$3,213,161.00**), or so much thereof as may be advanced and outstanding and unpaid hereunder, together with interest on the outstanding principal balance from day to day remaining as herein specified. The outstanding principal balance hereof and accrued but unpaid interest shall be due and payable as follows:

> **Accrued but unpaid interest only shall be due and payable in monthly installments, commencing June 21, 2007, with like installments of accrued but unpaid interest only due and payable on the 21st day of each successive month thereafter; and the entire outstanding principal balance of this Note, together with all accrued but unpaid interest shall be fully due and payable on November 21, 2007.**

    **Interest.**   The outstanding principal balance hereof shall bear interest prior to maturity at a varying rate per annum equal from day to day to the lesser of (a) the maximum rate permitted from day to day by applicable law ("Maximum Rate"), including as to Section 303.201 of the Texas Finance Code and Article 1D.002 of the Texas Credit Code (and as the same may be incorporated by reference in other Texas statutes), but otherwise without limitation, that rate based upon the "indicated rate ceiling," or (b) **1.00% above the Prime Rate** (herein defined) in effect from day to day based on a 365-day year and the actual number of days elapsed, each such change in the rate of interest charged hereunder to become effective, without notice to Maker, on the effective date of each change in the Prime Rate; provided, however, that at any time the rate of interest specified in clause (b) preceding shall exceed the Maximum Rate, thereby causing the interest on this Note to be limited to the Maximum Rate, then any subsequent reduction in the Prime Rate shall not reduce the rate of interest on this Note below the Maximum Rate until the aggregate amount of interest accrued hereon equals the aggregate amount of interest which would have accrued hereon if the interest rate specified in clause (b) preceding had at all times been in effect. All past due principal and interest shall bear interest at the Maximum Rate. All payments shall be applied first to accrued but unpaid interest and then to principal.

    **Prime Rate.**   As used herein, the term "**Prime Rate**" shall mean the Prime Rate then most recently published in the Money Rates Section of **The Wall Street Journal** and described as the prime or base rate of interest per annum on corporate loans posted by at least seventy-five percent (75%) of the nation's thirty (30) largest banks. In the event **The Wall Street Journal** fails to publish such Prime Rate, or such Prime Rate ceases to exist for a period of more than ninety (90)



**EXHIBIT**

"A"

consecutive days, then the base rate of interest announced by Payee from time to time shall be substituted in its place.

**Interest Rate Floor.** Notwithstanding anything to the contrary contained in the foregoing, at no time shall the outstanding principal balance of this Note accrue interest at a rate less than **9.25%** per annum, based on a 365 day year and the actual number of days elapsed.

**Security.** This Note is secured by, among other things, a certain Mortgage ("Mortgage"), executed by Maker to Dwight I. Overton, Trustee for Payee covering the real property and improvements located at 1027 Edgewater Drive, Orlando, Florida 32804 and is also secured by, among other things, a certain Deed of Trust (the "Deed of Trust"), executed by Maker to Dwight I. Overton, Trustee for Payee covering the real property and improvements located at 119 Harbor Light, Horseshoe Bay, Texas 78657.

**Prepayment.** Maker may prepay the principal of this Note, in whole or in part, at any time without penalty or premium. All prepayments to principal shall be applied to principal in the inverse order of its stated maturity.

**Spreading.** Notwithstanding anything to the contrary contained herein, no provisions of this Note shall require the payment or permit the collection of interest in excess of the Maximum Rate. If any excess of interest in such respect is herein provided for, or shall be adjudicated to be so provided, in this Note or otherwise in connection with this loan transaction, the provisions of this paragraph shall govern and prevail, and neither Maker nor the sureties, guarantors, successors or assigns of Maker shall be obligated to pay the excess amount of such interest, or any other excess sum paid for the use, forbearance or detention of sums loaned pursuant hereto. If for any reason interest in excess of the Maximum Rate shall be deemed charged, required or permitted by any court of competent jurisdiction, any such excess shall be applied as a payment and reduction of the principal of indebtedness evidenced by this Note; and, if the principal amount hereof has been paid in full, any remaining excess shall forthwith be paid to Maker.

**Default.** If default be made in the payment of principal or interest under this Note, or upon the occurrence of any default in the performance of any covenant or obligation contained in the Mortgage and/or Deed of Trust, the holder hereof may, at its option, declare the entire unpaid principal of and accrued interest on this Note immediately due and payable without additional notice, demand or presentment, all of which are hereby waived, and upon such declaration, the same shall become and shall be immediately due and payable, and the holder hereof shall have the right to foreclose or otherwise enforce all liens or security interests securing payment hereof, or any part hereof, and offset against this Note any sum or sums owed by the holder hereof to Maker. Failure of the holder hereof to exercise this option shall not constitute a waiver of the right to exercise the same upon the occurrence of a subsequent event of default.

**Late Charge as to Overdue Payments.** If Payee has not received the full amount of any monthly payment within ten (10) days after the payment is due, Maker shall pay to Payee a late

Promissory Note                                                                                                Page – 2

charge equal to five percent (5%) of the overdue payment, but not to exceed the maximum rate permitted by law. This charge may only be assessed once on each late payment.

**Costs**   If the holder hereof expends any effort in any attempt to enforce payment of all or any part or installment of any sum due the holder hereunder, or if this Note is placed in the hands of an attorney for collection, or if it is collected through any legal proceedings, Maker agrees to pay all collection costs and fees incurred by the holder, including reasonable attorneys' fees.

**Governing Law.** This Note is made and is performable in the **City of Dallas, Dallas County, Texas,** and Maker and each surety, guarantor, endorser and other party ever liable for payment of any sums of money payable on this Note, jointly and severally waive the right to be sued hereon elsewhere. This Note shall be governed by and construed in accordance with the laws of the State of Texas and the applicable laws of the United States of America.

**Waiver of Presentment.** Maker and each surety, guarantor, endorser and other party ever liable for payment of any sums of money payable on this Note jointly and severally waive presentment and demand for payment, protest, notice of protest and non-payment or dishonor, notice of acceleration, notice of intent to accelerate, notice of intent to demand, diligence in collecting and grace, and consent to all extensions without notice for any period or periods of time and partial payments, before or after maturity, without prejudice to the holder. The holder shall similarly have the right to deal in any way, at any time, with one or more of the foregoing parties without notice to any other party, and to grant any such party any extensions of time for payment of any of said indebtedness, or to release part or all of the collateral securing this Note, or to grant any other indulgences or forbearances whatsoever, without notice to any other party and without in any way affecting the personal liability of any party hereunder.

**Assumption.**   If a third party desires to purchase the real property securing this Note, such purchaser will only be allowed to assume Maker's obligations under this Note, Mortgage and Deed of Trust, if Payee consents, which consent may be withheld in Payee's sole discretion. Otherwise, any transfer of the real property securing this Note without Payee's consent will constitute an event of default under this Note, the Mortgage and the Deed of Trust.

**Balloon Feature. At maturity, Maker must repay the entire principal balance of the loan and unpaid interest then due. Payee is under no obligation to refinance the loan at that time. Maker will, therefore, be required to make payment out of other assets that Maker may own or Maker will have to find a lender, which may be Payee, willing to lend Maker the money. If Maker refinances this loan at maturity, Maker will have to pay some or all of the closing costs normally associated with a new loan even if Maker obtains refinancing from Payee.**

**Interest Limits.**      Notwithstanding any other provision in this instrument or in any other instrument executed in connection with this instrument, in no event shall the undersigned ever be required to pay interest, whether before or after maturity, at a rate in excess of eighteen percent (18%) per annum, based on a 365 day year.

Promissory Note                                                                                       Page – 3

**Automatic Renewal.** Notwithstanding any other provision in this instrument or any other instrument executed in connection with this instrument, upon Maturity of the Note, Lender agrees to extend this Note for a period of six (6) months from the original date of maturity if Borrower is unwilling and/or unable to pay Lender the principal balance plus accrued but unpaid interest at the date of maturity.  Lender is not required to make any additional extensions, modifications, or renewals of the Note beyond the terms of this Instrument.

**Maker:**
Miracle Strip, L.L.C.

By _____
      Robert L. Christensen

Its:  Managing Member

**Promissory Note**                                                        **Page – 4**

INSTR 20070411434
OR BK 09317 PG 1580 PGS=7
MARTHA O. HAYNIE, COMPTROLLER
ORANGE COUNTY, FL
06/22/2007  03:50:46 PM
MTG DOC TAX 11,246.20
INTANG TAX 6,426.32
REC FEE 61.00

THIS INSTRUMENT PREPARED BY AND RETURN TO:
MICHAEL H. MYERS
16660 DALLAS PARKWAY, SUITE 2500
DALLAS, TEXAS 75248

# MORTGAGE DEED AND SECURITY AGREEMENT

**THIS MORTGAGE DEED AND SECURITY AGREEMENT** is executed the 21st day of May, 2007, by **MIRACLE STRIP, L.L.C.**, a Texas limited liability company, 364 Walton Way, Destin, Florida 32541 (herein "Mortgagor"), to **PLAINSCAPITAL BANK**, having a place of business at 18111 Preston Road, Suite 220, Dallas, Texas 75252 (herein "Mortgagee");

## WITNESSETH:

**THAT FOR GOOD AND VALUABLE CONSIDERATION**, and also in consideration of the aggregate sum named in the Promissory Note of even date herewith, hereinafter described, the Mortgagor hereby grants, bargains, sells, aliens, remises, conveys and confirms unto the Mortgagee all the certain land of which the Mortgagor is now seized and in possession situate in Orange County, Florida (herein the "Mortgaged Premises), to-wit:

Lot 1, less the North 25 feet thereof, WM. H. ARTHUR'S REPLAT OF LOTS 2, 3 & 4 OF REPLAT OF BUNNELL'S EDGEWATER TERRACE SUBDIVISION, according to the plat thereof, as recorded in Plat Book Q, Page 27, Public Records of Orange County, Florida, together with all its present or future improvements, appurtenances, furnishings, fixtures, inventory, equipment; and their associated proceeds, profits, issues, accounts, documents, instruments, general intangibles, chattel paper and contract rights; and together with all articles of personal property now or hereafter used in or about the improvements which are necessary to the complete and comfortable use and occupancy of the same for the purpose or purposes for which erected, and all building materials and equipment now or hereafter delivered to the above referenced real property and intended to be installed thereon or in or upon the improvements or used in the development of the above referenced real property, and all plans, drawings, surveys, appraisals, books, records and all other documents of any type or nature used or intended to be used in the development of the above referenced real property (all of such articles of personal property, building materials, equipment and documents being hereafter sometimes collectively referred to as the "Personal Property"); but not any consumer goods unless purchased with the proceeds of the loan reflected by the Note..

**TOGETHER** with all right, title and interest of the Mortgagor therein, including any after-acquired title or reversion, in and to the beds of any ways, streets, easements, licenses, rights of way, avenues, roads, alleys and public places open or proposed, in front of, running through, adjoining and adjacent to, or benefitting the Mortgaged Premises; and

**TOGETHER** with any and all improvements now or hereafter located on the Mortgaged Premises and all construction materials, goods, chattels, fixtures, appliances, apparatus, equipment, heating and air conditioning equipment, machinery and articles of personal property and replacement thereof (other than those owned by lessees of the Mortgaged Premises) now or hereafter affixed to, attached to, placed upon, or used in any way in connection with the complete and comfortable use, occupancy, or operation of the Mortgaged Premises (including, without limitation, any and all accounts, contract rights, franchises, licenses, permits, documents, instruments and general intangibles), whether now owned, or hereafter acquired, or in which the Mortgagor now has or shall hereafter acquire any right, title or interest whatsoever (whether by bill of sale, lease, conditional sales contract, or other title retention document or otherwise) which are, is, or shall be located upon or used or useful, either directly or indirectly, in Mortgagor's use, operation and enjoyment of the Mortgaged Premises, together with any and all replacements or substitutions thereof or therefor as well as the proceeds therefrom regardless of form.

**TO HAVE AND TO HOLD** the same, together with the tenements, hereditaments, rights-of-way, easements and appurtenances thereto belonging, and the rents, issues and profits thereof, and any and all improvements, construction, building materials and fixtures thereon unto the Mortgagee, in fee simple.

**AND** the Mortgagor covenants with the Mortgagee that the Mortgagor is indefeasibly seized of the Mortgaged Premises and personal property and has good and lawful authority to convey the Mortgaged Premises and personal property as aforesaid; that the Mortgagor hereby fully warrants the title to the Mortgaged Premises and personal property and will defend the same against the lawful claims of all persons whomsoever; and that the Mortgaged Premises are free and clear of all encumbrances except real property taxes for the years in which this Mortgage is executed, and those noted as exceptions to title in the title insurance policy insuring the lien of this Mortgage and approved by the Mortgagee.

**PROVIDED ALWAYS**, that if Mortgagor shall pay unto Mortgagee that certain promissory note of even date herewith made by, guaranteed by, or otherwise secured by Mortgagor in favor of the Mortgagee in the principal amount of **THREE MILLION TWO HUNDRED THIRTEEN THOUSAND ONE HUNDRED SIXTY-ONE AND NO/100 DOLLARS** ($3,213,161.00) (hereinafter referred to as the "Note"), by its terms expressly secured by this Mortgage; and if the Mortgagor shall duly, promptly and fully perform, discharge, execute, effect, complete and comply with and abide by each and every one of the stipulations, agreements, conditions and covenants of the Note and this Mortgage, then this Mortgage and the estate hereby created shall cease and be null and void.

**AND** the Mortgagor does hereby expressly covenant and agree that:

1. **Payment of Note.** It will pay the indebtedness evidenced by the Note in accordance with its terms, promptly at the times and in the manner that the principal and interest thereon shall become due.

2. **Performance of Note and Mortgage.** It will perform, comply with and abide by each and every one of the stipulations, agreements, conditions and covenants contained and set forth in said Note and this Mortgage.

3. **Maintenance and Repair.** It will keep all improvements and buildings now existing or hereafter erected on the Mortgaged Premises in good order and repair and not to do or permit waste on the Mortgaged Premises, nor to alter, remove or demolish any of said buildings or improvements or any fixtures and equipment attached or appertaining thereto without the prior written consent of the holder of the Note, nor to do or permit any other act whereby the Mortgaged Premises hereby conveyed shall become less valuable. In furtherance of, and not by way of limitation upon, the foregoing covenant, Mortgagor shall effect such repairs as the Mortgagee may reasonably require, and from time to time make all needful and proper replacements so that said buildings, improvements, fixtures, equipment and appurtenances will, at all

**EXHIBIT**

"B"

times, be in good condition, fit and proper for the respective purposes for which they were originally erected or installed. Mortgagee, or its agents, shall have the right and shall be permitted, at all reasonable times, to enter upon and inspect the Mortgaged Premises.

4.    **Payment of Taxes and Assessments.**   It will pay all taxes, assessments and public charges already levied or assessed or that may be hereafter levied or assessed upon or against the Mortgaged Premises or against any personal property herein conveyed, when due and payable according to law, before they become delinquent, and before any interest or penalty shall attach, and to deliver official receipts evidencing the payment of the same to the Mortgagee upon demand.

5.    **Payment of Liens and Claims.**   It will immediately pay and discharge any claim, lien, imposition or encumbrance against the Mortgaged Premises or personal property herein conveyed which is now or may become superior to this Mortgage and to permit no default or delinquency on any other lien, imposition, charge or encumbrance against the Mortgaged Premises and property.

6.    **Insurance.**   It will keep and maintain, during the term of the Loan, (i) if required by the Mortgagee, a policy of general public liability insurance affording coverage to the Mortgagee as an additional insured in an amount of $1,000,000.00 per person and $3,250,000.00 in the aggregate for any occurrence; (ii) in the event that improvements requiring a certificate of occupancy in order to be lawfully occupied are either presently located, or contemplated to be constructed, on the Land, then, an "all perils" policy of "extended" or "broad form" casualty insurance, insuring said improvements against casualty loss in an amount equal to at least one hundred percent of the full replacement cost of the improvements, existing or contemplated to be constructed on the Land and, in any event, in an amount sufficient to prevent the Mortgagor from becoming a co-insuror with respect to any loss covered by said policy; and (iii) in the event that there are permanent improvements constructed upon the Land which improvements lie in a special flood hazard area designated a such, under the National Flood Insurance Program, then (x) a policy of flood insurance insuring said improvements , and (y) proof of payment of the premium due thereunder. The policies of insurance required to be provided and maintained hereunder shall be issued by a company or companies to be approved by the Mortgagee, and the policy or policies to be held by and payable to the Mortgagee; and in the event any sum of money becomes payable under such policy or policies, the Mortgagee shall have the option to receive and apply the same on account of indebtedness hereby secured or to permit the Mortgagor to receive and use it, or any thereof, for other purposes, without thereby waiving or impairing any equity, lien or right under or by virtue of this Mortgage. In the event the Mortgagor shall for any reason fail to keep the said premises so insured, or fail to deliver promptly any of the said policies of insurance to the Mortgagee, or fail promptly to pay fully any premium therefore, the Mortgagee may place and pay for such insurance or any part thereof without waiving or affecting the option to foreclose or any right hereunder, and each and every such payment so made by the Mortgagee shall be deemed to have been added to the outstanding principal balance then due under the Note, shall bear interest from the date thereof until paid by the Mortgagor at the Default Rate and shall be secured by the lien of this Mortgage. In the event that the Mortgagor and Mortgagee have entered into a Loan Agreement or Construction Loan Agreement in connection with the Loan from Mortgagee to Mortgagor or evidenced by the Note, the terms and conditions of any such Loan Agreement relating to insurance shall be deemed to supplement the provisions set forth herein.

7.    **Compliance with Laws and Regulations.**   It will observe, abide by and comply with all statutes, ordinances, orders, requirements or decrees relating to the Mortgaged Premises by any Federal, state or municipal authority or subdivision, and to observe and comply with all conditions and requirements necessary to preserve and extend any and all rights, licenses, permits (including, but not limited to, zoning variances, special exceptions and nonconforming uses), privileges, franchises and concessions which are applicable to the Mortgaged Premises or which have been granted to or contracted for by Mortgagor in connection with any existing or presently contemplated use of the Mortgaged Premises. Mortgagor has not purchased, or is not purchasing, the Mortgaged Premises with the proceeds from any illegal transaction, and has not and will not use the Mortgaged Premises for any illegal purpose or activity that may subject the Mortgaged Premises to seizure or forfeiture.

8.    **Permits and Licenses.**   It will obtain, keep and constantly maintain in full force and effect during the entire term of this Mortgage all certificates, licenses and permits necessary to operate the Mortgaged Premises in accordance with its present or intended use, and not to assign, transfer, or in any manner change such certificates, licenses or permits without first receiving the written consent of the Mortgagee to do so.

9.    **Leases.**   It will perform every obligation of the Lessor and enforce every obligation of the Lessee in any and every lease that is or may subsequently be assigned to Mortgagee pursuant to the terms of this Mortgage or otherwise, and not to modify, alter, waive or cancel any such lease or any part thereof, nor anticipate for more than one month any rents that may be collectible under any such lease or that may have been assigned to Mortgagee and not to assign any such lease or any such rents to any party other than Mortgagee.

10.    **Access and Parking.**   It will construct, keep and constantly maintain, as the case may be, all drives, parking areas and the number of parking spaces theretofore or hereafter approved by the Mortgagee or heretofore or hereafter required by any governmental authority having jurisdiction over the Mortgagor or the Mortgaged Premises, and not to erect, build or construct upon any portion of the Mortgaged Premises any building or structure of any kind whatsoever, the erection, building or construction of which has not been previously approved by the Mortgagee.

11.    **Prior Encumbrances.**   With respect to any other Mortgage on the Mortgaged Premises which is superior to this Mortgage;

A.    Mortgagor will promptly pay, when due and payable, the interest, installments of principal, and all of the sums and charges mentioned in and made payable by any prior Mortgage;

B.    Mortgagor will promptly perform and observe all terms, covenants and conditions required to be performed and observed by Mortgagor under any prior Mortgage, within the periods provided in the prior Mortgage and will do all things necessary to preserve and keep the prior Mortgage free from default;

C.    Mortgagor will promptly notify Mortgagee, or cause the holder of the Mortgage to notify Mortgagee, in writing, of any default by Mortgagor in the performance or observance of any of the covenants or conditions on the part of Mortgagor to be performed under the prior Mortgage;

D.    Mortgagor will, within ten (10) days after written demand from Mortgagee, obtain from the holder of a prior Mortgage and deliver to Mortgagee a certificate stating that the prior Mortgage is in full force and effect, is unmodified, and that no notice of default thereunder has been served on the Mortgagor thereunder, and stating whether or not there are any defaults thereunder, specifying the nature of such defaults, if any;

E.    Mortgagor will furnish to Mortgagee, upon demand, proof of payment of all items which are required to be paid by Mortgagor pursuant to any prior Mortgage.

F.    In the event of any default under any prior Mortgage, Mortgagee, without being so obligated, may take any such action as Mortgagee considers desirable to cure or remedy the matter in default and preserve the interest of Mortgagee in the Mortgaged Property, including, without limitation, payment by Mortgagee of any installments of interest, principal or any other monies in default on the prior Mortgage. All sums advanced by Mortgagee hereunder shall bear interest at the highest rate permitted by Florida law and shall be secured by the lien of this Mortgage;

G.    Mortgagor will not accept any future advances under any prior Mortgage. The filing of this Mortgage is intended to constitute the notice required by Florida Statutes Section 697.04(1)(b) (the "Statute") and the Mortgagor agrees that the amount that may be secured by any prior Mortgage shall, from this point on, be limited to the amount actually advanced under any prior Mortgage at the time of recording of this Mortgage. Mortgagor agrees to execute any additional documents reasonably required by the Mortgagee to comply with the requirements of the Statute with respect to the limiting of future advances under any prior Mortgage and acknowledges that notice of such filing will be sent by the Mortgagee to the holder of all prior Mortgages in accordance with the requirements of the Statute.

H.   Mortgagor will not modify or amend any prior Mortgage.

I.   In the event any action should be instituted against the Mortgaged Premises with respect to any other lien or claim, whether alleged to be superior or junior to the lien of this Mortgage, or any default in any prior Mortgage or in the covenants contained in this paragraph relating to Prior Mortgage, whether or not cured by the Mortgagee, shall constitute a default in this Mortgage and the Mortgagee may accelerate all of the principal and accrued interest due under the Note and said amounts shall become payable forthwith and the Mortgagee may enforce its rights hereunder, including by way of illustration and not limitation, foreclosure of this Mortgage.

12.   **Failure to Pay Taxes or Assessments.** Notwithstanding any other provision of this Mortgage, if the Mortgagor shall default in the payment of any tax, lien, assessment or charge levied or assessed against the Mortgage Property or premises, or if the same or any part thereof are or become delinquent, then the Mortgagee, at its option, may at any time pay the same, together with any interest thereon and any accrued delinquency, redemption or other charges, fees, costs or expenses related thereto, and all payments made or costs incurred by the Mortgagee in connection therewith, shall be secured by the lien of this Mortgage and shall be, without demand, immediately repaid by the Mortgagor to the Mortgagee with interest thereon from the said of such payment at the maximum rate provided by law, except that Mortgagee may in its sole discretion permit Mortgagor to make such repayment in monthly installments of principal, together with said interest thereon, over a limited term of months established by Mortgagee (which monthly installments, if established by Mortgagee, may be prepaid by Mortgagor), and except that Mortgagee may, in its sole discretion, set the interest due on such payment at a rate less than the maximum rate provided by law. Mortgagee shall have no obligation on its part to determine that validity or necessity of any payment of taxes, etc., described herein and any such payment shall not waive or affect any option, remedy, lien, equity or right of Mortgagee under or by virtue of this Mortgage, to include, without limitation, any right or option to foreclose same. Nothing herein shall be construed as requiring Mortgagee to advance or expend monies for any of the purposes mentioned in this paragraph.

13.   **Escrow.** In order to more fully protect the security of this Mortgage, the Mortgagee, at its option, and without regard to the existence or nonexistence of any default on the part of the Mortgagor in making prompt payment of all taxes, assessments, public charges and insurance premiums as herein elsewhere required, may require the Mortgagor to deposit with the Mortgagee, together with and in addition to the monthly payment on the Note, an amount equal to one-twelfth (1/12) of the annual total of such taxes, assessments, charges and premiums (all as estimated by the Mortgagee in its sole discretion) so as to place sufficient funds in the hands of Mortgagee for the payment of such taxes, assessments, charges and premiums as the same shall become due, and the Mortgagee may hold the sums so deposited without interest commingled with its general funds and apply the same to the payment of said taxes, assessments, charges or premiums as they become due and payable. If at any time the funds so held by Mortgagee are insufficient to pay such taxes, assessments, charges or premiums as they become due and payable, the Mortgagor shall immediately, upon notice and demand by Mortgagee, deposit with Mortgagee the amount of such deficiency, and the failure on the part of the Mortgagor to do so shall entitle the Mortgagee, at its option, to itself make such payments in accordance with its right and pursuant to the conditions elsewhere in this Mortgage provided. Whenever any default exists under this Mortgage, Mortgagee may, at its option, apply any funds so held by it upon such of the indebtedness secured hereby, and in such order and manner of application as Mortgagee may elect.

14.   **Eminent Domain.** All awards and other compensation heretofore or hereafter to be made to Mortgagor and all subsequent owners of the Mortgaged Premises in any taking by eminent domain, either permanent or temporary, of all or any part of the Mortgaged Premises or any easement or any appurtenance thereto, including severance and consequential damages and change in grade of any street, are hereby assigned to Mortgagee, and Mortgagor hereby appoints Mortgagee as its attorney-in-fact, coupled with an interest, and authorizes, directs and empowers such attorney, at the option of said attorney, on behalf of Mortgagor, its successors and assigns, to adjust or compromise the claim for any such award and to alone collect and receive the proceeds thereof, to give proper receipts and acquittances therefore and, after deducting any expenses of collection, at its option, to apply the net proceeds as a credit upon any portion, as selected by Mortgagee, of the indebtedness secured hereby, notwithstanding the fact that the amount owing thereon may not then be due and payable or that the indebtedness is otherwise adequately secured. Mortgagor further covenants and agrees to give Mortgagee immediate notice of the actual or threatened commencement of any proceedings under eminent domain and will deliver to Mortgagee copies of any and all papers served in connection with any proceedings. Mortgagor further covenants and agrees to make, execute and deliver to Mortgagee, at any time or times, upon request, free, clear and discharged of any encumbrance of any kind whatsoever, any and all further assignments and/or other instruments deemed necessary by Mortgagee for the purpose of validity and sufficiently assigning all such awards and other compensation heretofore or hereafter to be made to Mortgagee (including the assignment of any award from the United States Government at any time after the allowance of the claim therefore, the ascertainment of the amount thereof and the issuance of the warrant for payment thereof).

15.   **Enforcement and Collection.** In the event that the Note secured hereby is placed in the hands of an attorney for collection, whether suit be brought or not, or in the event that the Mortgagee shall become a party, either as plaintiff or as defendant, in any action, suit or legal proceeding (including, without limitation, condemnation, probate, bankruptcy or administrative proceedings or any proceeding wherein proof of claim is by law required to be filed), hearing, motion or application before any Court or administrative body in relation to the Mortgaged Premises or the lien created hereby or herein, or for the recovery or protection of said indebtedness on the Mortgaged Premises, or for the foreclosure of this Mortgage, the Mortgagor shall save and hold the Mortgagee harmless from and against any and all costs and expenses incurred by the Mortgagee on account thereof, including, but not limited to, reasonable attorneys' fees, title searches and abstract and survey charges, and the Mortgagor shall repay, on demand, all such costs and expenses, together with interest thereon at the highest rate allowed by law until paid; all of which sums, if unpaid, shall be added to and become a part of the indebtedness secured hereby.

16.   **Interest on Delinquency or Default.** Any sums which shall not be paid when due, whether maturing by lapse of time or by reason of acceleration under the provisions of the Note or this Mortgage, and whether principal, interest or money owing for advancements pursuant to the terms of this Mortgage shall bear interest at the highest rate allowed by law until paid.

17.   **Late Charges.** Notwithstanding any of the provisions of this Mortgage or the Note secured hereby to the contrary, in the event that any payment required to be made under the provisions hereof shall not be paid when due, the Holder may collect a late charge not to exceed an amount equal to five percent (5%) of any installment of principal or interest which is not paid within ten (10) days of the date thereof, to cover the extra expense involved in handling delinquent payments, provided that collection of said late charge shall not be deemed a waiver by the Holder of any of its rights under this Note. Such payment or payments shall be made to the Mortgagee and shall be secured by the lien of this Mortgage. In the event that the Mortgagor shall fail to pay such late charges upon demand by the Mortgagee, the indebtedness secured hereby shall immediately become due and payable at the option of the Mortgagee.

18.   **Usury.** Nothing herein contained nor any transaction related hereto shall be construed or so operate as to require the Mortgagor to pay interest at a rate greater than it is now lawful in such case to contract for, or to make any payment or to do any act contrary to law, that if any clauses or provisions herein contained operate or would prospectively operate to invalidate this Mortgage or the Note in whole or in part, then, such clauses and provisions only shall be held for naught, as though not herein contained, and the remainder of this Mortgage shall remain operative and in full force and effect.

19.   **Events of Default/Remedies.** If Mortgagee deems itself insecure, or upon the happening of any of the following events, each of which shall constitute a default hereunder, all liabilities of Mortgagor to Mortgagee shall thereupon or thereafter, at the option of the Mortgagee, without notice or demand, become due and payable: (a) failure of any obligor (which term herein shall mean and include each maker, endorser, surety and guarantor of the Note) to perform any agreement hereunder or any other agreement with Mortgagee, to pay interest hereon when due or requested or demanded or to pay any other liability whatsoever to Mortgagee when due; (b) any event which causes or evidences a material adverse change to any obligor's financial condition, or the value of the Mortgaged Premises; (c) the death of any obligor; (d) the filing of

any petition under the Bankruptcy Code, or any similar federal or state statute, by or against any obligor; (e) an application for the appointment of a receiver or the making of a general assignment for the benefit of creditors by, or the insolvency of any obligor; (f) the failure of any obligor, or failure by any entity in which Mortgagor has any ownership or other beneficial interest, to pay the amount due to any other creditor as those amounts become due; (g) the entry of a judgment against any obligor; (h) the issuing of any writ of attachment or writ of garnishment, or the filing of any lien, against the property of any obligor; (i) the taking of possession of any substantial part of the property of any obligor at the instance of any governmental authority; (j) the dissolution, merger, consolidation, or reorganization of any obligor; (k) the transfer or assignment by any obligor of any interest or equity in the Mortgaged Premises or other Collateral securing repayment of the Note without the written consent of Mortgagee. Upon default, Mortgagee, at its option, may thereupon or thereafter declare the indebtedness evidenced by the Note, as well as all other monies secured hereby, to be forthwith due and payable, whereupon the principal of and the interest accrued on the Note and all other sums secured hereby shall become due and payable as if all of said sums of money were originally stipulated to be paid on such day, and thereupon, without notice or demand, the Mortgagee may avail itself of all rights and remedies provided by law and may prosecute a suit at law or in equity as if all monies secured hereby had matured prior to its institution, anything in the Note to the contrary notwithstanding. The Mortgagee may foreclose this Mortgage as to the amount so declared due and payable, and the Mortgaged Premises and personal property herein conveyed shall be sold according to law to satisfy and pay the same together with costs, expenses and allowances, including a reasonable fee for Mortgagee's attorneys, such attorneys' fees to be not less than ten percent (10%) of the principal amount of the Note secured hereby. The Mortgaged Premises may be sold in one parcel, several parcels or groups of parcels, and the Mortgagee shall be entitled to bid at the sale and, if the highest bidder for the Mortgaged Premises or any part thereof, shall be entitled to purchase same. The failure or omission on the part of the Mortgagee to exercise the option for acceleration of maturity and/or foreclosure following any default as aforesaid or to exercise any other option granted hereunder to Mortgagee when entitled to do so in any one or more instances, or the acceptance by Mortgagee of partial payments hereunder, shall not constitute a waiver of any such default or the right to exercise any such option, but such option shall remain continuously in force. Acceleration of maturity, once claimed hereunder by Mortgagee, at the option of mortgagee, may be rescinded by written acknowledgment to that effect by Mortgagee, but the tender and acceptance of partial payments alone shall not in any way affect or rescind such acceleration of maturity.

20.     **Conservation of Premises.**  At any time after default hereunder, the Mortgagee is authorized, without notice, in its sole discretion to enter upon and take possession of the Mortgaged Premises and property or any part thereof and to perform any acts which the Mortgagee deems necessary or proper to conserve the security herein intended to be provided by the Mortgaged Premises and property, and to collect and receive all rents, issues and profits thereof and therefrom, including those past due as well as those accruing thereafter.

21.     **Receiver.**  If, at any time after default hereunder in the opinion of the Mortgagee, a receivership may be necessary to protect the Mortgaged Premises, or its rents, issues, profits or produce, whether before or after maturity of the indebtedness secured hereby, or at the time of or after the institution of suit to collect such indebtedness or to enforce this Mortgage, the Mortgagee, as a matter of strict right and regardless of the value of the mortgage security for the amounts due hereunder or secured hereby, or of the solvency of any party bound for the payment of such indebtedness, shall have the right, upon ex parte application, without notice to anyone, and by any Court having jurisdiction, to the appointment of a receiver to take charge of, manage, preserve, protect and operate the Mortgaged Premises, to collect the rents, issues, profits and income thereof, to make all necessary and needful repairs, and to pay all taxes, assessments and charges against the Mortgaged Premises and all premiums for insurance thereon, and after payment of the expenses of the receivership and the management of the Mortgaged Premises to apply the net proceeds in reduction of the indebtedness secured hereby or in such other manner as the Court shall direct. Such receivership shall, at the option of Mortgagee, continue until full payment of all sums hereby secured, or until title to the Mortgaged Premises shall have passed by sale under this Mortgage.

22.     **Remedies Cumulative.**  The rights and remedies herein provided are cumulative and Mortgagee, as the holder of the Note and of every other obligation secured hereby, may recover judgment thereon, issue execution therefor and resort to every other right or remedy available at law or in equity, without first exhausting and without affecting or impairing the security of any right or remedy afforded hereby and no enumeration of special rights or powers by any provisions hereof shall be construed to limit any grant of general rights or powers, or to take away or limit any and all rights granted to or vested in Mortgagee by law.

23.     **Releases or Extensions.**  Mortgagee, without notice and without regard to the consideration, if any, paid therefor, and notwithstanding the existence at that time of any inferior mortgages or other liens thereon, may release any part of the security described herein or may release any person liable for any indebtedness secured hereby without in any way affecting the priority of this Mortgage, to the full extent of the indebtedness remaining unpaid hereunder, upon any part of the security not expressly released. Mortgagee may also agree with any party obligated on said indebtedness or having any interest in the security described herein, to extend the time for payment of any part or all of the indebtedness secured hereby, and such agreement shall not, in any way, release or impair this Mortgage, but shall extend the same as against the title of all parties having any interest in said security, which interest is subject to this Mortgage.

24.     **Waiver of Mortgagee.**  In the event Mortgagee: (a) releases, as aforesaid, any part of the security described herein or any person liable for any indebtedness secured hereby, or (b) grants an extension of time on any payments of the indebtedness secured hereby, or (c) takes other or additional security for the payment thereof, or (d) waives or fails to exercise any right granted herein or in said Note, any said act or omission shall not release Mortgagor, subsequent purchasers of the Mortgaged Premises or any part thereof, or makers, sureties, endorsers or guarantors, if any, of the Note, from any obligation or any covenant of this Mortgage or of the said Note, nor preclude Mortgagee from exercising any right, power or privilege herein granted or intended to be granted in the event of any other default then made, or any subsequent default.

25.     **Due on Sale or Encumbrance.**  Without the prior written consent of the Mortgagee, the sale, transfer or conveyance of all or any portion of the Mortgaged Premises or any interest therein, or any of the improvements or any personal property hereafter located upon the Mortgaged Premises, whether voluntarily or by operation of law, shall constitute a default under the terms of this Mortgage and entitle the Mortgagee to accelerate all sums due on account of the Note secured hereby and all other sums secured by this Mortgage.

26.     **Secondary Financing.**  So long as the Note secured hereby remains unpaid, the Mortgagor shall neither voluntarily nor involuntarily permit the Mortgage Premises or any personal property hereafter located thereon or used in connection there with, to become subject to any secondary lien, mortgage, security interest or encumbrance of any kind whatsoever (except a subordinate purchase money mortgage) without the prior written consent of the Mortgagee and the imposition of any such secondary lien, mortgage, security interest or encumbrance shall constitute a default hereunder and entitle the Mortgagee to declare all sums due on account of the Note and all other sums secured by this Mortgage immediately due and payable.

27.     **Future Advances.**  This Mortgage shall secure not only existing indebtedness, but also such future advances, whether such advances are obligatory or to be made at the option of the Mortgagee or otherwise as are made within twenty (20) years from the date hereof, to the same extent as if such future advances were made on the date of the execution of this Mortgage, but such secured indebtedness shall not exceed at any one time the maximum principal amount equal to double the amount of said Note plus interest, and any advances or disbursements made for the benefit or protection of or the payment of taxes, assessments, levies or insurance upon the property covered by the lien of this Mortgage, with interest on such disbursements. To the extent that this Mortgage may secure more than one note, a default in the payment of any such note secured hereby shall constitute a default in the payment of all of such notes.

28.     **Security Agreement.**  This Mortgage and Security Agreement is and shall be deemed to create, grant, give and convey a mortgage of, a lien and encumbrance upon, and a security interest in both real and personal property including all improvements now or hereafter located on the Mortgaged Premises, including, without limitation, the following:

(a)     All fixtures, goods, chattels, construction materials, furniture, furnishings, equipment, machinery, apparatus, appliances, and other items of personal property, whether tangible or intangible, of any kind, nature or description, whether now owned

or hereafter acquired, which is, are or shall hereafter be located upon, attached, affixed to or used or useful, either directly or indirectly, in connection with the use, occupancy or operation of the Mortgaged Premises (the "property") and the improvements thereon, and improvements, including, without limitation, any and all licenses, permits or franchises, used or required in connection with such use, occupancy or operation;

(b)   All leases, rents, royalties, issues, revenues, profits, proceeds, income or other benefits accruing to or derived from the property, the improvements and appurtenances thereto;

(c)   All general intangibles and accounts in connection with the construction of improvements on the property, including, without limitation, licenses, permit rights, contracts with architects, engineers, consultants, general contractors, subcontractors, surveyors, mechanics, materialmen, suppliers, and/or laborers in connection with or pertaining to the construction of buildings or any other improvements on the property, construction completion contracts, payment bonds, performance bonds, lien transfer bonds, sales contracts, drawings, plans and specifications, building permits, sewer, water or other utility tap-in fees, deposits, reservation agreements, impact fees, other construction contracts and other related documents and agreements; Together with any and all additions, replacements or substitutions thereto, thereof or therefor, as well as the proceeds thereof or therefrom regardless of form. This Mortgage shall also serve as a "Security Agreement" within the meaning of the Uniform Commercial Code as adopted and in force from time to time in the State of Florida, and shall be operative and effective as such in addition to, and not in substitution for, any other Security Agreement executed by the Mortgagor in connection with the loan transaction secured hereby. The Mortgagor agrees to and shall, upon the request of Mortgagee, execute and deliver to Mortgagee in form satisfactory to Mortgagee, such "Financing Statements," descriptions of property and such further assurances as Mortgagee, in its sole discretion, may from time to time consider necessary to create, perfect and preserve the lien and encumbrances hereof and the security interest granted herein upon and in the above-described Collateral. The Mortgagee, at the expense of the Mortgagor, may or shall cause such statements, descriptions and assurances and this Mortgage and Security Agreement to be recorded and rerecorded, filed and refiled, at such times and in such places as may be required or permitted by law to so create, perfect and preserve the lien and encumbrance hereof upon all of the Mortgaged Premises.

29.   **Hazardous Substances:**

(a)   Representations and Warranties.  Mortgagor hereby represents and warrants that neither Mortgagor nor, to the best of its knowledge, any other person has ever caused or permitted any Hazardous Substances (as such term is hereinafter defined) to be placed, held, located or disposed of on, under or at the Premises or any part thereof and neither the Premises nor any part thereof has ever been used (whether by the Mortgagor or, to the best of Mortgagor's knowledge, by any other person) as a dump site or storage site (whether permanent or temporary) for any Hazardous Substances.

(b)   Indemnification.  Mortgagor hereby agrees to indemnify Lender and hold Lender harmless from and against any and all losses, liabilities (including strict liability), damages, injuries, expenses, and costs including, without limitation, reasonable attorneys' fees, of any settlement or judgment or claims of any and every kind whatsoever paid, incurred or suffered by, or asserted against, Mortgagee by any person or entity or governmental agency, for, with respect to, or as a direct or indirect result of, the presence on or under, or detection of or the escape, seepage, leakage, spillage, emission, discharge or release from the Mortgaged Premises of, and all costs and expenses of testing and remediation of, any Hazardous Substance, including, without limitation, any losses, liabilities (including strict liability), damage, injuries, expenses, and costs, including without limitation, reasonable attorney's fees, of any settlement or judgment or claims asserted or arising under, as amended, the Comprehensive Environmental Response, Compensation and Liability Act, the Superfund Amendment and Reauthorization Act, the Resource Conservation Recovery Act, the Federal Water Pollution Control Act, the Federal Environmental Pesticides Act, the Clean Water Act, the Clean Air Act, any so called federal, state or local "Superfund," "Superlien," or environmental protection statutes (including Chapter 403, Florida Statutes), or any other statute, law, ordinance, code, rule, regulation, order or decree regulating, relating to or imposing liability (including strict liability), or standards of conduct concerning any Hazardous Substance, regardless of whether or not caused by, on the behalf of, or within the control of the Mortgagor.  In the event that Mortgagee incurs any losses, damages, claims, costs, fees, penalties, charges, assessments, taxes, fines or expenses, including reasonable attorneys' fees and legal assistants' fees, in connection with cleaning up, removing, disposal of or otherwise eliminating any Hazardous Materials from the Mortgaged Property, such losses, damages, claims, costs, fees, penalties, charges, assessments, taxes, fines or expenses, including reasonable attorneys' fees and legal assistants' fees, shall constitute remedial advances by Mortgagee as provided in paragraph 12 hereinabove.  The provisions of this Paragraph will survive the foreclosure of this Mortgage or any deed in lieu of foreclosure delivered to Mortgagee by Mortgagor.

(c)   Definition of Hazardous Substances.  For purposes of this Mortgage, the term "Hazardous Substances" shall mean any flammable materials or explosives, radioactive materials, asbestos, hazardous, toxic or dangerous waste, substance or material, including, without limitation:  petroleum based or petrochemical products, any substances defined as or included in the definition of "asbestos," or "asbestos product," "hazardous substances," "hazardous waste," "hazardous materials," "wastes," "solid waste," "contaminant" or "toxic substances" under any applicable federal, state or local laws, regulations, rules, guidelines, codes, ordinances, order, or decrees regulating, relating to, or imposing liability (including strict liability) or standards of conduct, storage, or handling, as of now or at any time herein after.

(d)   Notification.  If Mortgagor receives any notice or knowledge of (i) the occurrence of any event involving the use, spill, release, leak, seepage, discharge or cleanup of any Hazardous Substance, or (ii) any complaint, order, citation or other notice with regard to air emissions, water discharges, or any other environmental, health or safety matter affecting Mortgagor or the Mortgaged Premises (an "Environmental Complaint") from any person or entity (including, without limitation, the EPA) then Mortgagor shall immediately notify Mortgagee orally and in writing of any such notice, and, if the Environmental Complaint is in writing, shall immediately deliver a copy of the Environmental Complaint to Mortgagee.

(e)   Mortgagee's Right to Act.  In addition to all other rights granted to Mortgagee under this Mortgage, Mortgagee shall have the right, but not the obligation, to enter onto the Mortgaged Premises or to take such other actions as it deems necessary or advisable to test and sample the Mortgaged Premises to determine the existence of Hazardous Substances on the Mortgaged Premises, and to cleanup, remove, resolve, or minimize the impact of, or otherwise deal with, any such Hazardous Substance or Environmental Complaint, either prior to, or following receipt of any notice from any person or entity (including, without limitation, the EPA) asserting the existence of any Hazardous Substance or any Environmental Complaint pertaining to the Mortgaged Premises or any part thereof which, if true, could result in an order, suit or other action against Mortgagee and/or which, in the sole option of Mortgagee, could have an adverse impact on the value of the Mortgaged Premises or otherwise jeopardize Mortgagee's lien against the Mortgaged Premises granted or created under this Mortgage.  Any funds of Mortgagee used for any purpose referred to in this subparagraph shall become a part of the principal indebtedness secured by this Mortgage and shall be payable to Mortgagee on demand with interest at the default rate of the Note.

30.   **Construction Mortgage Terms.**  If this Mortgage secures repayment of a construction loan, the following provisions shall apply:

A.    The Note secured hereby may also be secured by the terms and provisions of an Absolute Assignment of Leases and Rents, recorded in the County where this instrument is recorded, and additionally may be secured by contracts of guaranty, assignments of leases or other security documents. The terms and provisions of each of such enumerated documents shall be considered a part hereof as fully as if set forth herein verbatim. Any default under this Mortgage or the Note secured hereby shall constitute a default under the aforesaid Absolute Assignment of Leases and Rents and any other such security documents and any default under said Absolute Assignment of Leases and Rents, or other security documents shall likewise constitute a default hereunder and under the Note secured hereby.

B.    The proceeds of the loan evidenced by the Note secured hereby shall be disbursed in accordance with the terms of a certain Construction or Acquisition and Development Loan Agreement (herein "Loan Agreement") between Mortgagor and Mortgagee bearing even date herewith. The terms, provisions and conditions of such Loan Agreement are by this reference thereto made a part hereof, and the Mortgagor agrees that it shall fully, duly and promptly perform, observe, discharge, comply with and abide by each and every of the promises, stipulations, agreements, covenants, conditions and contingencies thereof. Such Loan Agreement provides for and governs the amounts, time, manner and method of the sums evidenced by the Note secured by this Mortgage and various other agreements with respect to the mortgage transaction until the completion of the improvements thereby contemplated to be constructed by the Mortgagor, and the furnishing and equipping of such improvements. The Mortgagor expressly covenants and agrees that any default under or of the terms and provisions of said Loan Agreement shall likewise constitute a default under this Mortgage and the Note secured hereby. Nothing contained herein or in said Loan Agreement shall obligate the Mortgagee to construct, furnish or equip any improvements on the Mortgaged Premises nor to pay for the construction, furnishing or equipping of any such improvements, and the Mortgagee shall, in no event, be required to determine whether the loan proceeds disbursed to Mortgagor are applied in accordance with the provisions of the Loan Agreement or any other documents pertaining to the loan secured hereby.

C.    Within thirty (30) days from the date hereof, the Mortgagor agrees to commence construction of the improvements described in the Loan Agreement upon the Mortgaged Premises (herein "Improvements"). Upon commencement of construction of the Improvements, the Mortgagor agrees to proceed continuously and with reasonable diligence to completion. In any case or event, the Mortgagor agrees to complete construction of the Improvements no later than the date of completion set forth in the Loan Agreement. The Mortgagor and Mortgagee expressly covenant and agree that time is of the essence. Failure by the Mortgagor to complete construction of the Improvements within the times above allowed shall constitute a default under the terms of this Mortgage and, at the option of Mortgagee, the indebtedness secured hereby shall at once become due and payable in full.

D.    Mortgagor, in furtherance of its obligation to obtain and maintain insurance as herein elsewhere required, shall, from the commencement of construction of the Improvements to the completion thereof, obtain and maintain continuously throughout said period a builder's risk insurance policy or policies with such company or companies and in such amounts as may be acceptable to the Mortgagee. Each policy shall contain a noncontributing loss payable clause in favor of the Mortgagee. The amount of coverage of said builder's risk policy or policies, the form of coverage and the issuing company or companies shall be subject to the written approval of the Mortgagee and a duplicate original of each policy shall be delivered to the Mortgagee. Each policy shall provide for not less than ten (10) days' written notice of cancellation to the Mortgagee. In the event that a portion of the Improvements is completed, that the Mortgagor or any tenant, licensee, lessee, guest or invitee shall take possession of such completed portion of the Improvements prior to the completion of all construction, then, and in that event, the Mortgagor shall furnish to the Mortgagee an endorsement of said builder's risk insurance policy, which endorsement shall recognize that the completed portion of the Improvements is still covered by the policy and provide that no defenses will be raised or coverage denied because of the occupancy and possession of such completed portion of the Improvements.

E.    Mortgagor, in furtherance of its obligation to obtain and maintain insurance as herein elsewhere provided, shall, subsequent to the completion of the Improvements, obtain and maintain continuously an insurance policy or policies providing fire and extended coverage and general comprehensive liability insurance on the Improvements with such company or companies and in such amounts as may be acceptable to the Mortgagee. Each policy shall contain noncontributing loss payable clause in favor of the Mortgagee. The amount of coverage of said fire and extended coverage and general comprehensive liability insurance policy or policies, the form of coverage and the issuing company or companies shall be subject to the written approval of the Mortgagee and a duplicate original of each policy shall be delivered to the Mortgagee. Each policy shall provide for not less than ten (10) days' written notice of cancellation to the Mortgagee.

31.    **Financial Statements.** If Mortgagor is an individual, Mortgagor shall provide to Mortgagee, at least semi-annually, and promptly upon request, then current personal financial statements and then current complete copies of his latest federal and state tax returns and proof of then current earnings. If Mortgagor is a partnership, Mortgagor shall provide to Mortgagee, at least semi-annually, and promptly upon request, then current financial statements and partnership tax returns, including, without limitation, each partner's Schedule K-1, and each of the partners of the Mortgagor partnership, by execution hereof, agrees to submit to Mortgagee, promptly upon request, then current personal financial statements and complete copies of their latest federal and state tax returns. If Mortgagor is a corporation, Mortgagor shall provide to Mortgagee, at least semi-annually, and promptly upon request, then current financial statements and corporate tax returns, and the undersigned officer of the Mortgagor corporation, by execution hereof, agrees to submit to Mortgagee, promptly upon request, then current personal financial statements and complete copies of his latest federal and state tax returns.

32.    **Binding Effect.** The provisions hereof shall be binding upon the Mortgagor and the heirs, devisees, personal representatives, successors and assigns of the Mortgagor, and inure to the benefit of Mortgagee and its successors and assigns. Where more than one Mortgagor is named herein, the obligations and liabilities of said Mortgagor shall be joint and several. The word "Mortgagor" shall be interpreted to mean singular, plural, feminine, masculine or neuter as the context shall require.

33.    **Paragraph Headings.** Paragraph headings are included herein for mere ease of reference, and shall not be considered in connection with the interpretation of this instrument, or as substantive provisions hereof.

34.    **Governing Law.** This instrument is to be governed by and construed in accordance with the laws of the State of Florida.

## WAIVER OF JURY TRIAL

**MAKER AND HOLDER HEREBY KNOWINGLY, VOLUNTARILY AND INTENTIONALLY WAIVE THE RIGHT EITHER MAY HAVE TO A TRIAL BY JURY IN RESPECT OF ANY LITIGATION BASED HEREON OR ARISING OUT OF, UNDER OR IN CONNECTION WITH THIS NOTE AND ANY AGREEMENT**

CONTEMPLATED TO BE EXECUTED IN CONJUNCTION HEREWITH, OR COURSE OF CONDUCT, COURSE OF DEALING, STATEMENTS (WHETHER VERBAL OR WRITTEN) OR ACTIONS OF EITHER PARTY. THIS PROVISION OS A MATERIAL INDUCEMENT FOR HOLDER ENTERING INTO THIS AGREEMENT.

**IN WITNESS WHEREOF**, the said Mortgagor has hereunto set its hand and seal the day and year first above written.

Witnesses:

MORTGAGOR
**MIRACLE STRIP, L.L.C.**,
a Texas limited liability company

Print: _Jan Brown_

By _____
      Robert L. Christensen

Print: _Anthony R. Dudley_

Its:  Managing Member

STATE OF _IDAHO_
COUNTY OF _Blaine_

The foregoing instrument was acknowledged before me this _24_ day of May, 2007, by Robert L. Christensen, as the Managing Member of **MIRACLE STRIP, L.L.C.**, a Texas limited liability company, on behalf of the company, who is personally known to me, or who has produced _FLORIDA D.L._ as identification.

_Valerie Thomson_
Notary Public, State of _ID_
Print: _VALERIE THOMSON_
My Commission Expires: _3·12·13_

VALERIE L. THOMSON
NOTARY PUBLIC
STATE OF IDAHO

RECEIVED BSTILLMAN

JAN 2 8 2008

INSTR 20080023490
OR BK 09563 PG 1474 PGS=4
MARTHA O. HAYNIE, COMPTROLLER
ORANGE COUNTY, FL
01/11/2008   03:04:49 PM
REC FEE 35.50

#1839109

**RETURN TO:**
**MICHAEL H. MYERS**
MYERS WILSON P.C.
16660 Dallas Parkway
Suite 2500
Dallas, Texas 75248

**NOTICE OF MORTGAGE AND NOTE MODIFICATION**
**AND RENEWAL AGREEMENT**

This Notice of Mortgage and Note Modification and Renewal Agreement (the "Agreement"), made and entered into this 21st day of November 2007, by and between PlainsCapital Bank having an address of 18111 Preston Road, Suite 220, Dallas, Texas 75252 (herein called the "Mortgagee"), Miracle Strip, L.L.C. having an address of 364 Walton Way, Destin, Florida 32541 (herein called the "Mortgagor"), and Robert L. Christensen (referred to herein as "Guarantor").

**RECITALS:**

A.       Heretofore, the aforementioned Mortgagor made and executed in favor of Mortgagee the following:

(i)       Promissory Note dated May 21, 2007 in the original principal balance of Three Million Two Hundred Thirteen Thousand One Hundred Sixty-One and no/100 Dollars ($3,213,161.00) (the "**Note**") as renewed, extended, and modified herein;

B.       In order to secure the payment of the aforementioned Loan Amount, the Mortgagor (among other things) made and executed the following:

(i)       Mortgage Deed and Security Agreement (herein referred to as the "**Mortgage**") recorded in Official Records Book 9317, page 1580.

All of the aforesaid recorded in the Public Records of ORANGE County, Florida.  The indebtedness of Mortgagor to Mortgagee is further evidenced an governed by a Construction Loan Agreement dated May 21, 2007 (herein "**Loan Agreement**").  The real and personal property, mortgaged by the Mortgage and any modifications thereof is herein referred to as the "**Mortgaged Property**."

C.       Mortgagor is the fee title owner of the Mortgaged Property and none of the Mortgaged Property has been transferred nor has any of the same been hypothecated or have liens otherwise been placed thereupon; and,

D.       Mortgagee is the owner and holder of the Mortgage and Loan Agreement as described above; and

E.       The Mortgagor and the Mortagee have agreed to modify the maturity date of the Note.

F.       The Mortgagor and Guarantor acknowledge that this Agreement confers a substantial benefit upon them and is supported by good and valuable consideration.

**NOW THEREFORE**, the parties do hereby modify and amend, for good, valuable and sufficient consideration, receipt of which is hereby acknowledged by the undersigned parties, the terms and provisions of the aforementioned Mortgage, Loan Agreement, and Note to the end that it is understood and agreed as follows:

1.       All of the RECITALS hereinabove set forth are by reference incorporated in and specifically made a part of this Agreement as fully as if set forth herein verbatim.

2.       The total principal indebtedness secured by the Mortgage is the sum of Three Million Two Hundred Thirteen Thousand One Hundred Sixty-One and no/100 Dollars ($3,213,161.00).

**NOTICE OF MORTGAGE AND NOTE MODIFICATION**
**AND RENEWAL AGREEMENT**



**EXHIBIT**

"C"

**PAGE -- 1**

3.      The accrued buy unpaid interest due and owing on the Note as of the date of this Agreement is Twenty-Five Thousand Two Hundred Forty-Three and 12/100 Dollars ($25,243.12).

4.      The terms of the Note, Mortgage, and Loan Agreement are only modified and renewed as specifically set forth herein, and term of the Note not specifically modified by this Agreement is hereby incorporated in and specifically made a part of this Agreement as fully as if set forth herein verbatim.

5.      Notwithstanding anything contained herein to the contrary:

(a)     all of the Mortgaged Property described shall remain in all respects subject to the lien, charge, security interest and/or encumbrance of the Mortgage; and

(b)     nothing herein contained or done pursuant hereto shall (i) release, adversely affect, impair or be construed to release, adversely affect or impair the lien, charge, security interest or encumbrance effectuated by the Mortgage or other documents executed in conjunction with the loan evidenced by the Note (herein collectively the "**Loan Documents**") or the priority thereof over other liens, charges, encumbrances or conveyances; (ii) release, adversely affect or impair the liability of any party or parties who may now or hereafter be liable under or on account of the Note, Mortgage or other Loan Documents; (iii) release, adversely affect or impair any grant or lien or security interest, representation in regard to and/or warranty of title heretofore made by the Mortgagor., all of which shall remain in full force and effect and shall inure to the benefit of the Mortgagee and are hereby reaffirmed and regranted and confirmed to the Mortgagee as modified hereby or simultaneously herewith.

6.      That all of the other stipulations, terms, provisions and covenants and agreements as contained in the aforesaid Mortgage, Note, Loan Agreement, and other Loan Documents shall remain in full force and effect except as herein provided to the contrary or modified in conjunction herewith.

7.      This Agreement shall be binding upon and shall inure to the benefit of the successors and assigns of the respective parties hereto.

8.      **Waiver of Right to Jury Trial.   MORTGAGOR AND MORTGAGEE HEREBY KNOWINGLY, VOLUNTARILY AND INTENTIONALLY WAIVE THE RIGHT EITHER MAY HAVE TO A TRIAL BY JURY IN RESPECT OF ANY LITIGATION BASED HEREON, OR ARISING OUT OF, UNDER OR IN CONNECTION WITH THIS AGREEMENT INCLUDING BUT NOT LIMITED TO ANY POST JUDGMENT ACTIONS AND ANY AGREEMENT CONTEMPLATED TO BE EXECUTED IN CONJUNCTION HEREWITH, OR ANY COURSE OF CONDUCT, COURSE OF DEALING, STATEMENTS (WHETHER VERBAL OR WRITTEN) OR ACTIONS OF EITHER PARTY. THIS PROVISION IS A MATERIAL INDUCEMENT FOR THE MORTGAGEE ENTERING INTO THIS AGREEMENT.**

**IN WITNESS WHEREOF,** this Agreement has been signed by each of the undersigned as of the day and year first above written.

Signed, sealed and delivered
in the presence of:

"**MORTGAGEE**"

**PLAINSCAPITAL BANK**

By: _____
        Wade Julian

Print Name: _____

Its:  Vice President

_____

Print Name: _____

**NOTICE OF MORTGAGE AND NOTE MODIFICATION
AND RENEWAL AGREEMENT**                                             **PAGE -- 2**

THE STATE OF TEXAS          §
                            §
COUNTY OF DALLAS            §

     This instrument was acknowledged before me on the __27th__ day of December, 2007, by Wade Julian, Vice President, of Lender, on behalf of said Bank for the purposes and considerations therein expressed.

_Emily E Britt_
Notary Public in and for
the State of Texas
Notary's Printed Name:
_Emily E. Britt_

My Commission Expires: _July 14, 2010_

[NOTARY SEAL: EMILY E BRITT / NOTARY PUBLIC / STATE OF TEXAS / EXPIRES 07-14-2010]

**"MORTGAGOR"**

**MIRACLE STRIP, L.L.C.**

By _____
     Robert L. Christensen

Its:  Managing Member

Print Name: _Robert L. Christensen_

Print Name: _____


THE STATE OF ~~IDAHO~~ _Florida_          §

COUNTY OF ~~BLAINE~~ _Okaloosa_

     This instrument was acknowledged before me on the _26_ day of December, 2007, by Robert L. Christensen in his capacity as Managing Member of Miracle Strip, L.L.C. for the purposes and considerations therein expressed.

_Kimberly S. Madsen_
Notary Public in and for
The State of ~~Idaho~~ _Fl_
Notary's Printed Name:
_Kimberly S. Madsen_
My Commission expires: _1-5-09_

[NOTARY SEAL]

**NOTICE OF MORTGAGE AND NOTE MODIFICATION
AND RENEWAL AGREEMENT**

**PAGE -- 3**

"GUARANTOR"

By _____

Robert L. Christensen

(Individually)

Print Name: _____

*Robert L. Christensen*

Print Name: _____

THE STATE OF ~~IDAHO~~ *71* §

COUNTY OF ~~BLAINE~~ *Oballoosa* §

    This instrument was acknowledged before me on the *26* day of December, 2007, by Robert L. Christensen for the purposes and considerations therein expressed.

_____

Notary Public in and for

The State of ~~Idaho~~

Notary's Printed Name: *Kimberly Mudlin*

My Commission expires: *7-5-09*

**NOTICE OF MORTGAGE AND NOTE MODIFICATION**
**AND RENEWAL AGREEMENT**
                                                                     PAGE -- 4

DOC # 20080417444   B: 9728 P: 5936
07/14/2008 11:40:19 AM   Page 1 of 5
Rec Fee: $44.00   Doc Type: AGM
Deed Doc Tax: $0.00
Intangible Tax: $0.00
Mortgage Stamp: $0.00
Martha O. Haynie, Comptroller
Orange County, FL
MB - Ret To: PLAINSCAPITAL BANK

RETURN TO:
**MICHAEL H. MYERS**
MYERS WILSON P.C.
16660 Dallas Parkway
Suite 2500
Dallas, Texas 75248

## SECOND NOTICE OF MORTGAGE AND NOTE MODIFICATION
## AND RENEWAL AGREEMENT

This Second Notice of Mortgage and Note Modification and Renewal Agreement (the "Agreement"), made and entered into this 21st day of May 2008, by and between PlainsCapital Bank having an address of 18111 Preston Road, Suite 220, Dallas, Texas 75252 (herein called the "Mortgagee"), Miracle Strip, L.L.C. having an address of 364 Walton Way, Destin, Florida 32541 (herein called the "Mortgagor"), and Robert L. Christensen (referred to herein as "Guarantor").

### RECITALS:

**A.**   Heretofore, the aforementioned Mortgagor made and executed in favor of Mortgagee the following:

(i)   Promissory Note dated May 21, 2007 in the original principal balance of Three Million Two Hundred Thirteen Thousand One Hundred Sixty-One and no/100 Dollars ($3,213,161.00) (the "**Note**") as renewed, extended, and modified herein;

**B.**   In order to secure the payment of the aforementioned Loan Amount, the Mortgagor (among other things) made and executed the following:

(i)   Mortgage Deed and Security Agreement (herein referred to as the "**Mortgage**") recorded in Official Records Book 9317, page 1580.

(ii)   Notice of Mortgage and Note Modification and Renewal Agreement (the "First Modification") recorded in Official Records Book 9563, page 1474.

All of the aforesaid recorded in the Public Records of ORANGE County, Florida. The indebtedness of Mortgagor to Mortgagee is further evidenced an governed by a Construction Loan Agreement dated May 21, 2007 (herein "**Loan Agreement**"). The real and personal property, mortgaged by the Mortgage and any modifications thereof is herein referred to as the "**Mortgaged Property**."

**C.**   Mortgagor is the fee title owner of the Mortgaged Property and none of the Mortgaged Property has been transferred nor has any of the same been hypothecated or have liens otherwise been placed thereupon; and,

**D.**   Mortgagee is the owner and holder of the Mortgage and Loan Agreement as described above; and

**E.**   The Mortgagor and the Mortagee have agreed to modify the maturity date of the Note.

**F.**   The Mortgagor and Guarantor acknowledge that this Agreement confers a substantial benefit upon them and is supported by good and valuable consideration.

**NOW THEREFORE,** the parties do hereby modify and amend, for good, valuable and sufficient consideration, receipt of which is hereby acknowledged by the undersigned parties, the terms and provisions of the aforementioned Mortgage, Loan Agreement, and Note to the end that it is understood and agreed as follows:

1.   All of the RECITALS hereinabove set forth are by reference incorporated in and specifically made a part of this Agreement as fully as if set forth herein verbatim.

**SECOND NOTICE OF MORTGAGE AND NOTE**
**MODIFICATION AND RENEWAL AGREEMENT**



PAGE -- 1

EXHIBIT
"D"

2.      The total principal indebtedness secured by the Mortgage is the sum of Three Million Two Hundred Thirteen Thousand One Hundred Sixty-One and no/100 Dollars ($3,213,161.00).

3.      The accrued buy unpaid interest due and owing on the Note as of the date of this Agreement is Twenty-Five Thousand Two Hundred Forty-Three and 12/100 Dollars ($24,362.08).

4.      The maturity date of the Note has been extended from May 21, 2008 to July 21, 2008, Payments on the Note shall be due and payable monthly beginning June 21, 2008 and continuing monthly thereafter on the 21st day of each month through and including July 21, 2008, on which date the entire unpaid principal balance and all accrued but unpaid interest on the Note shall be due and payable in full ("Maturity Date").  Borrower may at any time prepay the full amount or any part of the Note without the payment of any premium or fee, such payment being applied first to accrued and unpaid interest and the balance, if any, to principal.

5.      The terms of the Note, Mortgage, and Loan Agreement are only modified and renewed as specifically set forth herein, and term of the Note not specifically modified by this Agreement is hereby incorporated in and specifically made a part of this Agreement as fully as if set forth herein verbatim.

6.      Notwithstanding anything contained herein to the contrary:

(a)      all of the Mortgaged Property described shall remain in all respects subject to the lien, charge, security interest and/or encumbrance of the Mortgage; and

(b)      nothing herein contained or done pursuant hereto shall (i) release, adversely affect, impair or be construed to release, adversely affect or impair the lien, charge, security interest or encumbrance effectuated by the Mortgage or other documents executed in conjunction with the loan evidenced by the Note (herein collectively the "**Loan Documents**") or the priority thereof over other liens, charges, encumbrances or conveyances; (ii) release, adversely affect or impair the liability of any party or parties who may now or hereafter be liable under or on account of the Note, Mortgage or other Loan Documents; (iii) release, adversely affect or impair any grant or lien or security interest, representation in regard to and/or warranty of title heretofore made by the Mortgagor., all of which shall remain in full force and effect and shall inure to the benefit of the Mortgagee and are hereby reaffirmed and regranted and confirmed to the Mortgagee as modified hereby or simultaneously herewith.

7.      That all of the other stipulations, terms, provisions and covenants and agreements as contained in the aforesaid Mortgage, Note, Loan Agreement, and other Loan Documents shall remain in full force and effect except as herein provided to the contrary or modified in conjunction herewith.

8.      This Agreement shall be binding upon and shall inure to the benefit of the successors and assigns of the respective parties hereto.

9.      **Waiver of Right to Jury Trial.  MORTGAGOR AND MORTGAGEE HEREBY KNOWINGLY, VOLUNTARILY AND INTENTIONALLY WAIVE THE RIGHT EITHER MAY HAVE TO A TRIAL BY JURY IN RESPECT OF ANY LITIGATION BASED HEREON, OR ARISING OUT OF, UNDER OR IN CONNECTION WITH THIS AGREEMENT INCLUDING BUT NOT LIMITED TO ANY POST JUDGMENT ACTIONS AND ANY AGREEMENT CONTEMPLATED TO BE EXECUTED IN CONJUNCTION HEREWITH, OR ANY COURSE OF CONDUCT, COURSE OF DEALING, STATEMENTS (WHETHER VERBAL OR WRITTEN) OR ACTIONS OF EITHER PARTY.  THIS PROVISION IS A MATERIAL INDUCEMENT FOR THE MORTGAGEE ENTERING INTO THIS AGREEMENT.**

IN WITNESS WHEREOF, this Agreement has been signed by each of the undersigned as of the day and year first above written.

**SECOND NOTICE OF MORTGAGE AND NOTE**
**MODIFICATION AND RENEWAL AGREEMENT**                                      **PAGE -- 2**

THE STATE OF ~~IDAHO~~ §

COUNTY OF ~~BLAINE~~ §

This instrument was acknowledged before me on the _20_ day of June, 2008, by Robert L. Christensen in his capacity as Managing Member of Miracle Strip, L.L.C. for the purposes and considerations therein expressed.

> KIMBERLY S. MODLIN
> MY COMMISSION # DD 370388
> EXPIRES: February 5, 2009
> Bonded Thru Notary Public Underwriters

Notary Public in and for
The State of ~~Idaho~~
Notary's Printed Name:
My Commission expires: _2-5-09_

Print Name: _Lynn T. Murphy_

Print Name: _Ilene Allen_

"GUARANTOR"

By _____
Robert L. Christensen
(Individually)

THE STATE OF ~~IDAHO~~ §

COUNTY OF ~~BLAINE~~ §

This instrument was acknowledged before me on the _20_ day of June, 2008, by Robert L. Christensen for the purposes and considerations therein expressed.

Notary Public in and for
The State of ~~Idaho~~
Notary's Printed Name:
My Commission expires: _2-5-09_

**SECOND NOTICE OF MORTGAGE AND NOTE**
**MODIFICATION AND RENEWAL AGREEMENT**

PAGE – 4

Signed, sealed and delivered
in the presence of:

**"MORTGAGEE"**

**PLAINSCAPITAL BANK**

By: _____
    Cory Newberry

Print Name: _Lynn Womack_

Its:  Banking Officer

Print Name: _Linda Vo_

THE STATE OF TEXAS     §
                            §
COUNTY OF DALLAS     §

       This instrument was acknowledged before me on the **30th** day of June, 2008, by Cory Newberry, Banking Officer, of Lender, on behalf of said Bank for the purposes and considerations therein expressed.

```
VALERIE HERRINGTON
Notary Public, State of Texas
My Commission Expires
May 22, 2010
```

_____
Notary Public in and for
the State of Texas
Notary's Printed Name:
_Valerie Herrington_

My Commission Expires: _5/22/2010_

**"MORTGAGOR"**

**MIRACLE STRIP, L.L.C.**

By: _____
    Robert L. Christensen

Print Name: _Lynn T. Murphy_

Its:  Managing Member

Print Name: _Ilene Allen_

**SECOND NOTICE OF MORTGAGE AND NOTE**
**MODIFICATION AND RENEWAL AGREEMENT**

**PAGE -- 3**

This page has been intentionally left blank....

DOC # 2008058561
09/26/2008 12:02:01 PM  Page 1 of 5
Rec Fee: $44.00  Doc Type: MOD
Deed Doc Tax: $0.00
Intangible Tax: $0.00
Mortgage Stamp: $0.00
Martha O. Haynie, Comptroller
Orange County, FL
MB - Ret To: MICHAEL H MYERS

B: 9767 P: 2983

IMAGED OSILVA

RECEIVED OSILLIAN

NOV 2 0 2008

RETURN TO:
**MICHAEL H. MYERS**
MYERS WILSON P.C.
16660 Dallas Parkway
Suite 2500
Dallas, Texas 75248

 *Corrected*

**THIRD NOTICE OF MORTGAGE AND NOTE MODIFICATION
AND RENEWAL AGREEMENT**

This Third Notice of Mortgage and Note Modification and Renewal Agreement (the "Agreement"), made and entered into this 21st day of July 2008, by and between PlainsCapital Bank having an address of 18111 Preston Road, Suite 220, Dallas, Texas 75252 (herein called the "Mortgagee"), Miracle Strip, L.L.C. having an address of 364 Walton Way, Destin, Florida 32541 (herein called the "Mortgagor"), and Robert L. Christensen (referred to herein as "Guarantor").

## RECITALS:

A.        Heretofore, the aforementioned Mortgagor made and executed in favor of Mortgagee the following:

(i)        Promissory Note dated May 21, 2007 in the original principal balance of Three Million Two Hundred Thirteen Thousand One Hundred Sixty-One and no/100 Dollars ($3,213,161.00) (the "**Note**") as renewed, extended, and modified herein;

B.        In order to secure the payment of the aforementioned Loan Amount, the Mortgagor (among other things) made and executed the following:

(i)        Mortgage Deed and Security Agreement (herein referred to as the "**Mortgage**") recorded in Official Records Book 9317, page 1580.

(ii)       Notice of Mortgage and Note Modification and Renewal Agreement (the "First Modification") recorded in Official Records Book 9563, page 1474.

(iii)      Second Notice of Mortgage and Note Modification and Renewal Agreement (the "Second Modification") recorded in Official Records Book 9728, page 5936.

All of the aforesaid recorded in the Public Records of ORANGE County, Florida. The indebtedness of Mortgagor to Mortgagee is further evidenced and governed by a Construction Loan Agreement dated May 21, 2007 (herein "**Loan Agreement**"). The real and personal property, mortgaged by the Mortgage and any modifications thereof is herein referred to as the "**Mortgaged Property**."

C.        Mortgagor is the fee title owner of the Mortgaged Property and none of the Mortgaged Property has been transferred nor has any of the same been hypothecated or have liens otherwise been placed thereupon; and,

D.        Mortgagee is the owner and holder of the Mortgage and Loan Agreement as described above; and

E.        The Mortgagor and the Mortagee have agreed to modify the maturity date of the Note.

F.        The Mortgagor and Guarantor acknowledge that this Agreement confers a substantial benefit upon them and is supported by good and valuable consideration.

**NOW THEREFORE**, the parties do hereby modify and amend, for good, valuable and sufficient consideration, receipt of which is hereby acknowledged by the undersigned parties, the terms and provisions of the aforementioned Mortgage, Loan Agreement, and Note to the end that it is understood and agreed as follows:

**THIRD NOTICE OF MORTGAGE AND NOTE
MODIFICATION AND RENEWAL AGREEMENT**

PAGE -- 1

**EXHIBIT**

"E"

1.      All of the RECITALS hereinabove set forth are by reference incorporated in and specifically made a part of this Agreement as fully as if set forth herein verbatim.

2.      The total principal indebtedness secured by the Mortgage is the sum of Three Million Two Hundred Thirteen Thousand One Hundred Sixty-One and no/100 Dollars ($3,213,161.00).

3.      The accrued buy unpaid interest due and owing on the Note as of the date of this Agreement is Twenty-Five Thousand Two Hundred Forty-Three and 12/100 Dollars ($24,362.08).

4.      The maturity date of the Note has been extended from July 21, 2008 to September 21, 2008, Payments on the Note shall be due and payable monthly beginning August 21, 2008 and continuing monthly thereafter on the 21st day of each month through and including September 21, 2008, on which date the entire unpaid principal balance and all accrued but unpaid interest on the Note shall be due and payable in full ("Maturity Date").  Borrower may at any time prepay the full amount or any part of the Note without the payment of any premium or fee, such payment being applied first to accrued and unpaid interest and the balance, if any, to principal.

5.      The terms of the Note, Mortgage, and Loan Agreement are only modified and renewed as specifically set forth herein, and term of the Note not specifically modified by this Agreement is hereby incorporated in and specifically made a part of this Agreement as fully as if set forth herein verbatim.

6.      Notwithstanding anything contained herein to the contrary:

        (a)      all of the Mortgaged Property described shall remain in all respects subject to the lien, charge, security interest and/or encumbrance of the Mortgage; and

        (b)      nothing herein contained or done pursuant hereto shall (i) release, adversely affect, impair or be construed to release, adversely affect or impair the lien, charge, security interest or encumbrance effectuated by the Mortgage or other documents executed in conjunction with the loan evidenced by the Note (herein collectively the "**Loan Documents**") or the priority thereof over other liens, charges, encumbrances or conveyances; (ii) release, adversely affect or impair the liability of any party or parties who may now or hereafter be liable under or on account of the Note, Mortgage or other Loan Documents; (iii) release, adversely affect or impair any grant or lien or security interest, representation in regard to and/or warranty of title heretofore made by the Mortgagor., all of which shall remain in full force and effect and shall inure to the benefit of the Mortgagee and are hereby reaffirmed and regranted and confirmed to the Mortgagee as modified hereby or simultaneously herewith.

7.      That all of the other stipulations, terms, provisions and covenants and agreements as contained in the aforesaid Mortgage, Note, Loan Agreement, and other Loan Documents shall remain in full force and effect except as herein provided to the contrary or modified in conjunction herewith.

8.      This Agreement shall be binding upon and shall inure to the benefit of the successors and assigns of the respective parties hereto.

9.      **Waiver of Right to Jury Trial.**  **MORTGAGOR AND MORTGAGEE HEREBY KNOWINGLY, VOLUNTARILY AND INTENTIONALLY WAIVE THE RIGHT EITHER MAY HAVE TO A TRIAL BY JURY IN RESPECT OF ANY LITIGATION BASED HEREON, OR ARISING OUT OF, UNDER OR IN CONNECTION WITH THIS AGREEMENT INCLUDING BUT NOT LIMITED TO ANY POST JUDGMENT ACTIONS AND ANY AGREEMENT CONTEMPLATED TO BE EXECUTED IN CONJUNCTION HEREWITH, OR ANY COURSE OF CONDUCT, COURSE OF DEALING, STATEMENTS (WHETHER VERBAL OR WRITTEN) OR ACTIONS OF EITHER PARTY.  THIS PROVISION IS A MATERIAL INDUCEMENT FOR THE MORTGAGEE ENTERING INTO THIS AGREEMENT.**

        IN WITNESS WHEREOF, this Agreement has been signed by each of the undersigned as of the day and year first above written.

**THIRD NOTICE OF MORTGAGE AND NOTE**
**MODIFICATION AND RENEWAL AGREEMENT**                                              **PAGE -- 2**

Signed, sealed and delivered
in the presence of:

**"MORTGAGEE"**

**PLAINSCAPITAL BANK**

By: _____
　　　　Cory Newberry

Print Name: _Linda Vo_

Its: Banking Officer

Print Name: _Emily E. Britt_

THE STATE OF TEXAS　　§
　　　　　　　　　　　　§
COUNTY OF DALLAS　　　§

　　　　This instrument was acknowledged before me on the ___5th___ day of ~~August~~ September, 2008, by Cory Newberry, Banking Officer, of Lender, on behalf of said Bank for the purposes and considerations therein expressed.

_____
Notary Public in and for
the State of Texas
Notary's Printed Name:
_Valerie Herrington_

> VALERIE HERRINGTON
> Notary Public, State of Texas
> My Commission Expires
> May 22, 2010

My Commission Expires: _5/22/2010_

**"MORTGAGOR"**

**MIRACLE STRIP, L.L.C.**

By: _____
　　　　Robert L. Christensen

Print Name: _Lynn Murphy_

Its: Managing Member

Print Name: _Ilene Allen_

**THIRD NOTICE OF MORTGAGE AND NOTE
MODIFICATION AND RENEWAL AGREEMENT**

PAGE -- 3

THE STATE OF ~~IDAHO~~ 7l §
COUNTY OF ~~BLAINE~~ *Okaloosa* §
§

    This instrument was acknowledged before me on the __29__ day of August, 2008, by Robert L. Christensen in his capacity as Managing Member of Miracle Strip, L.L.C. for the purposes and considerations therein expressed.

> KIMBERLY S. MODLIN
> MY COMMISSION # DD 370388
> EXPIRES: February 5, 2009
> Bonded Thru Notary Public Underwriters

*Kimberly S. Modlin*
Notary Public in and for
The State of Idaho
Notary's Printed Name:
*Kimberly S. Modlin*
My Commission expires: __2-5-09__

*Lynn Murphy*
Print Name: *Lynn Murphy*

*Ilene Allen*
Print Name: *Ilene Allen.*

**"GUARANTOR"**

By: _____
    Robert L. Christensen
    (Individually)

THE STATE OF ~~IDAHO~~ 7l §
COUNTY OF ~~BLAINE~~ *Okaloosa* §
§

    This instrument was acknowledged before me on the __29__ day of August, 2008, by Robert L. Christensen for the purposes and considerations therein expressed.

*Kimberly S. Modlin*
Notary Public in and for
The State of Idaho
Notary's Printed Name:
*Kimberly S. Modlin*
My Commission expires: __2-5-09__

> KIMBERLY S. MODLIN
> MY COMMISSION # DD 370388
> EXPIRES: February 5, 2009
> Bonded Thru Notary Public Underwriters

**THIRD NOTICE OF MORTGAGE AND NOTE
MODIFICATION AND RENEWAL AGREEMENT**

**PAGE – 4**

This page has been intentionally left blank....

DOC # 2008 ,6940  B: 9799 P: 7583
12/09/2008 10:32:05 AM  Page 1 of 5
Rec Fee: $44.00  Doc Type: MOD
Deed Doc Tax: $0.00
Intangible Tax: $0.00
Mortgage Stamp: $0.00
Martha O. Haynie, Comptroller
Orange County, FL
MB - Ret To: PLAINSCAPITAL BANK

*1839109*

RETURN TO:
**PLAINSCAPITAL BANK**
18111 Preston Road
Suite 220
Dallas, Texas 75252

Received BCOFFEY

JAN 2 2 2008



## FOURTH NOTICE OF MORTGAGE AND NOTE MODIFICATION
## AND RENEWAL AGREEMENT

   This Fourth Notice of Mortgage and Note Modification and Renewal Agreement (the "Agreement"), made and entered into this 21st day of September 2008, by and between PlainsCapital Bank having an address of 18111 Preston Road, Suite 220, Dallas, Texas 75252 (herein called the "Mortgagee"), Miracle Strip, L.L.C. having an address of 364 Walton Way, Destin, Florida 32541 (herein called the "Mortgagor"), and Robert L. Christensen (referred to herein as "Guarantor").

### RECITALS:

**A.**      Heretofore, the aforementioned Mortgagor made and executed in favor of Mortgagee the following:

   (i)      Promissory Note dated May 21, 2007 in the original principal balance of Three Million Two Hundred Thirteen Thousand One Hundred Sixty-One and no/100 Dollars ($3,213,161.00) (the "**Note**") as renewed, extended, and modified herein;

**B.**      In order to secure the payment of the aforementioned Loan Amount, the Mortgagor (among other things) made and executed the following:

   (i)      Mortgage Deed and Security Agreement (herein referred to as the "**Mortgage**") recorded in Official Records Book 9317, page 1580.

   (ii)     Notice of Mortgage and Note Modification and Renewal Agreement (the "First Modification") recorded in Official Records Book 9563, page 1474.

   (iii)    Second Notice of Mortgage and Note Modification and Renewal Agreement (the "Second Modification") recorded in Official Records Book 9728, page 5936.

   (iv)     Third Notice of Mortgage and Note Modification and Renewal Agreement (the "Third Modification") recorded in Official Records Book 9767, page 2983.

All of the aforesaid recorded in the Public Records of ORANGE County, Florida. The indebtedness of Mortgagor to Mortgagee is further evidenced and governed by a Construction Loan Agreement dated May 21, 2007 (herein "**Loan Agreement**"). The real and personal property, mortgaged by the Mortgage and any modifications thereof is herein referred to as the "**Mortgaged Property**."

**C.**      Mortgagor is the fee title owner of the Mortgaged Property and none of the Mortgaged Property has been transferred nor has any of the same been hypothecated or have liens otherwise been placed thereupon; and,

**D.**      Mortgagee is the owner and holder of the Mortgage and Loan Agreement as described above; and

**E.**      The Mortgagor and the Mortagee have agreed to modify the maturity date of the Note.

**F.**      The Mortgagor and Guarantor acknowledge that this Agreement confers a substantial benefit upon them and is supported by good and valuable consideration.

   **NOW THEREFORE,** the parties do hereby modify and amend, for good, valuable and sufficient consideration, receipt of which is hereby acknowledged by the undersigned parties, the terms and provisions of the aforementioned Mortgage, Loan Agreement, and Note to the end that it is understood and agreed as follows:

**FOURTH NOTICE OF MORTGAGE AND NOTE**                                **PAGE -- 1**
**MODIFICATION AND RENEWAL AGREEMENT**



EXHIBIT

"F"

1.      All of the RECITALS hereinabove set forth are by reference incorporated in and specifically made a part of this Agreement as fully as if set forth herein verbatim.

2.      The total principal indebtedness secured by the Mortgage is the sum of Three Million Two Hundred Thirteen Thousand One Hundred Sixty-One and no/100 Dollars ($3,213,161.00).

3.      The accrued but unpaid interest due and owing on the Note as of the date of this Agreement is Twenty-Five Thousand One Hundred Seventy-Four and 14/100 Dollars ($25,174.14).

4.      The maturity date of the Note has been extended from September 21, 2008 to November 21, 2008, Payments on the Note shall be due and payable monthly beginning October 21, 2008 and continuing monthly thereafter on the 21st day of each month through and including November 21, 2008, on which date the entire unpaid principal balance and all accrued but unpaid interest on the Note shall be due and payable in full ("Maturity Date").  Borrower may at any time prepay the full amount or any part of the Note without the payment of any premium or fee, such payment being applied first to accrued and unpaid interest and the balance, if any, to principal.

5.      The terms of the Note, Mortgage, and Loan Agreement are only modified and renewed as specifically set forth herein, and term of the Note not specifically modified by this Agreement is hereby incorporated in and specifically made a part of this Agreement as fully as if set forth herein verbatim.

6.      Notwithstanding anything contained herein to the contrary:

(a)      all of the Mortgaged Property described shall remain in all respects subject to the lien, charge, security interest and/or encumbrance of the Mortgage; and

(b)      nothing herein contained or done pursuant hereto shall (i) release, adversely affect, impair or be construed to release, adversely affect or impair the lien, charge, security interest or encumbrance effectuated by the Mortgage or other documents executed in conjunction with the loan evidenced by the Note (herein collectively the "**Loan Documents**") or the priority thereof over other liens, charges, encumbrances or conveyances; (ii) release, adversely affect or impair the liability of any party or parties who may now or hereafter be liable under or on account of the Note, Mortgage or other Loan Documents; (iii) release, adversely affect or impair any grant or lien or security interest, representation in regard to and/or warranty of title heretofore made by the Mortgagor., all of which shall remain in full force and effect and shall inure to the benefit of the Mortgagee and are hereby reaffirmed and regranted and confirmed to the Mortgagee as modified hereby or simultaneously herewith.

7.      That all of the other stipulations, terms, provisions and covenants and agreements as contained in the aforesaid Mortgage, Note, Loan Agreement, and other Loan Documents shall remain in full force and effect except as herein provided to the contrary or modified in conjunction herewith.

8.      This Agreement shall be binding upon and shall inure to the benefit of the successors and assigns of the respective parties hereto.

9.      **Waiver of Right to Jury Trial.   MORTGAGOR AND MORTGAGEE HEREBY KNOWINGLY, VOLUNTARILY AND INTENTIONALLY WAIVE THE RIGHT EITHER MAY HAVE TO A TRIAL BY JURY IN RESPECT OF ANY LITIGATION BASED HEREON, OR ARISING OUT OF, UNDER OR IN CONNECTION WITH THIS AGREEMENT INCLUDING BUT NOT LIMITED TO ANY POST JUDGMENT ACTIONS AND ANY AGREEMENT CONTEMPLATED TO BE EXECUTED IN CONJUNCTION HEREWITH, OR ANY COURSE OF CONDUCT, COURSE OF DEALING, STATEMENTS (WHETHER VERBAL OR WRITTEN) OR ACTIONS OF EITHER PARTY.  THIS PROVISION IS A MATERIAL INDUCEMENT FOR THE MORTGAGEE ENTERING INTO THIS AGREEMENT.**

IN WITNESS WHEREOF, this Agreement has been signed by each of the undersigned as of the day and year first above written.

**FOURTH NOTICE OF MORTGAGE AND NOTE
MODIFICATION AND RENEWAL AGREEMENT**                                    **PAGE -- 2**

Signed, sealed and delivered
in the presence of:

**"MORTGAGEE"**

**PLAINSCAPITAL BANK**

By: _____
Cory Newberry

Its:  Banking Officer

Print Name: _Lynn Womack_

Print Name: _Valerie Herrington_

THE STATE OF TEXAS §
COUNTY OF ~~DALLAS~~ COLLIN §
§

This instrument was acknowledged before me on the 18th day of ~~October~~ November, 2008, by Cory Newberry, Banking Officer of Lender, on behalf of said Bank for the purposes and considerations therein expressed.

_Lynn Womack_
Notary Public in and for
the State of Texas
Notary's Printed Name:
_Lynn Womack_

My Commission Expires: _2-20-2009_

**"MORTGAGOR"**

**MIRACLE STRIP, L.L.C.**

By: _____
Robert L. Christensen

Its:  Managing Member

Print Name: _Robert L Christensen_

Print Name: _Robert L Christensen_

**FOURTH NOTICE OF MORTGAGE AND NOTE
MODIFICATION AND RENEWAL AGREEMENT**

THE STATE OF Florida §
§
COUNTY OF Santa Rosa §

This instrument was acknowledged before me on the 4 day of ~~October~~ November, 2008, by Robert L. Christensen in his capacity as Managing Member of Miracle Strip, L.L.C. for the purposes and considerations therein expressed.

_____
Notary Public in and for
The State of Florida
Notary's Printed Name:
Ilene Allen.
My Commission expires: May 17, 2010

ILENE ALLEN
MY COMMISSION # DD 553353
EXPIRES: May 17, 2010
Bonded Thru Budget Notary Services

"GUARANTOR"

Print Name: Robert L. Christensen

Print Name: Robert L. Christensen

By: _____
Robert L. Christensen
(Individually)

THE STATE OF Florida §
§
COUNTY OF SantaRosa §

This instrument was acknowledged before me on the 4 day of ~~October~~ November, 2008, by Robert L. Christensen for the purposes and considerations therein expressed.

_____
Notary Public in and for
The State of Florida
Notary's Printed Name:
Ilene Allen
My Commission expires: May 17, 2010

ILENE ALLEN
MY COMMISSION # DD 553353
EXPIRES: May 17, 2010
Bonded Thru Budget Notary Services

**FOURTH NOTICE OF MORTGAGE AND NOTE**
**MODIFICATION AND RENEWAL AGREEMENT**                    PAGE -- 4

This page has been intentionally left blank....

```
DOC # 20090145906    B: 9841 P: 8362
03/12/2009 07:50:59 AM Page 1 of 5
Rec Fee: $44.00  Doc Type: MOD
Deed Doc Tax: $0.00
Intangible Tax: $0.00
Mortgage Stamp: $0.00
Martha O. Haynie, Comptroller
Orange County, FL
MB - Ret To: PLAINSCAPITAL BANK
```

RETURN TO:
**PLAINSCAPITAL BANK**
18111 Preston Road
Suite 220
Dallas, Texas 75252

## FIFTH NOTICE OF MORTGAGE AND NOTE MODIFICATION
## AND RENEWAL AGREEMENT

This Fifth Notice of Mortgage and Note Modification and Renewal Agreement (the "Agreement"), made and entered into this 21st day of November 2008, by and between PlainsCapital Bank having an address of 18111 Preston Road, Suite 220, Dallas, Texas 75252 (herein called the "Mortgagee"), Miracle Strip, L.L.C. having an address of 364 Walton Way, Destin, Florida 32541 (herein called the "Mortgagor"), and Robert L. Christensen (referred to herein as "Guarantor").

### RECITALS:

A.     Heretofore, the aforementioned Mortgagor made and executed in favor of Mortgagee the following:

(i)     Promissory Note dated May 21, 2007 in the original principal balance of Three Million Two Hundred Thirteen Thousand One Hundred Sixty-One and no/100 Dollars ($3,213,161.00) (the "Note") as renewed, extended, and modified herein;

B.     In order to secure the payment of the aforementioned Loan Amount, the Mortgagor (among other things) made and executed the following:

(i)     Mortgage Deed and Security Agreement (herein referred to as the "Mortgage") recorded in Official Records Book 9317, page 1580.

(ii)     Notice of Mortgage and Note Modification and Renewal Agreement (the "First Modification") recorded in Official Records Book 9563, page 1474.

(iii)     Second Notice of Mortgage and Note Modification and Renewal Agreement (the "Second Modification") recorded in Official Records Book 9728, page 5936.

(iv)     Third Notice of Mortgage and Note Modification and Renewal Agreement (the "Third Modification") recorded in Official Records Book 9767, page 2983.

(v)     Fourth Notice of Mortgage and Note Modification and Renewal Agreement (the "Fourth Modification") recorded in Official Records.

All of the aforesaid recorded in the Public Records of ORANGE County, Florida. The indebtedness of Mortgagor to Mortgagee is further evidenced and governed by a Construction Loan Agreement dated May 21, 2007 (herein "Loan Agreement"). The real and personal property, mortgaged by the Mortgage and any modifications thereof is herein referred to as the "Mortgaged Property."

C.     Mortgagor is the fee title owner of the Mortgaged Property and none of the Mortgaged Property has been transferred nor has any of the same been hypothecated or have liens otherwise been placed thereupon; and,

D.     Mortgagee is the owner and holder of the Mortgage and Loan Agreement as described above; and

E.     The Mortgagor and the Mortagee have agreed to modify the maturity date of the Note.

F.     The Mortgagor and Guarantor acknowledge that this Agreement confers a substantial benefit upon them and is supported by good and valuable consideration.

FIFTH NOTICE OF MORTGAGE AND NOTE
MODIFICATION AND RENEWAL AGREEMENT

PAGE – 1

**EXHIBIT**

"G"

**NOW THEREFORE,** the parties do hereby modify and amend, for good, valuable and sufficient consideration, receipt of which is hereby acknowledged by the undersigned parties, the terms and provisions of the aforementioned Mortgage, Loan Agreement, and Note to the end that it is understood and agreed as follows:

1.      All of the RECITALS hereinabove set forth are by reference incorporated in and specifically made a part of this Agreement as fully as if set forth herein verbatim.

2.      The total principal indebtedness secured by the Mortgage is the sum of Three Million Two Hundred Thirteen Thousand One Hundred Sixty-One and no/100 Dollars ($3,213,161.00).

3.      The accrued but unpaid interest due and owing on the Note as of the date of this Agreement is Twenty-Five Thousand One Hundred Seventy-Four and 17/100 Dollars ($25,174.17).

4.      The maturity date of the Note has been extended from November 21, 2008 to November 21, 2009. Payments on the Note shall be due and payable monthly beginning December 21, 2008 and continuing monthly thereafter on the 21st day of each month through and including November 21, 2009, on which date the entire unpaid principal balance and all accrued but unpaid interest on the Note shall be due and payable in full ("Maturity Date"). Borrower may at any time prepay the full amount or any part of the Note without the payment of any premium or fee, such payment being applied first to accrued and unpaid interest and the balance, if any, to principal.

5.      The Note is hereby modified to require Borrower to make monthly principal payments on the Note (the "Principal Payments"). Said Principal Payments shall be calculated based on a twenty (20) year amortization of the principal balance due under the Note. Borrower is required to make said Principal Payments in addition to making monthly payments of accrued but unpaid interest on the Note. The estimated monthly payment due on December 21, 2008 is Twenty-Nine Thousand Four Hundred Twenty-Eight and 28/100 Dollars ($29,428.28), however, subsequent payments may vary in amount as the Note is subject to a variable interest rate.

6.      The terms of the Note, Mortgage, and Loan Agreement are only modified and renewed as specifically set forth herein, and term of the Note not specifically modified by this Agreement is hereby incorporated in and specifically made a part of this Agreement as fully as if set forth herein verbatim.

7.      Notwithstanding anything contained herein to the contrary:

    (a)      all of the Mortgaged Property described shall remain in all respects subject to the lien, charge, security interest and/or encumbrance of the Mortgage; and

    (b)      nothing herein contained or done pursuant hereto shall (i) release, adversely affect, impair or be construed to release, adversely affect or impair the lien, charge, security interest or encumbrance effectuated by the Mortgage or other documents executed in conjunction with the loan evidenced by the Note (herein collectively the "Loan Documents") or the priority thereof over other liens, charges, encumbrances or conveyances; (ii) release, adversely affect or impair the liability of any party or parties who may now or hereafter be liable under or on account of the Note, Mortgage or other Loan Documents; (iii) release, adversely affect or impair any grant or lien or security interest/representation in regard to and/or warranty of title heretofore made by the Mortgagor., all of which shall remain in full force and effect and shall inure to the benefit of the Mortgagee and are hereby reaffirmed and regranted and confirmed to the Mortgagee as modified hereby or simultaneously herewith.

8.      That all of the other stipulations, terms, provisions and covenants and agreements as contained in the aforesaid Mortgage, Note, Loan Agreement, and other Loan Documents shall remain in full force and effect except as herein provided to the contrary or modified in conjunction herewith.

9.      This Agreement shall be binding upon and shall inure to the benefit of the successors and assigns of the respective parties hereto.

10. **Waiver of Right to Jury Trial.** MORTGAGOR AND MORTGAGEE HEREBY KNOWINGLY, VOLUNTARILY AND INTENTIONALLY WAIVE THE RIGHT EITHER MAY HAVE TO A TRIAL BY JURY IN RESPECT OF ANY LITIGATION BASED HEREON, OR ARISING OUT OF, UNDER OR IN CONNECTION WITH THIS AGREEMENT INCLUDING BUT NOT LIMITED TO ANY POST JUDGMENT ACTIONS AND ANY AGREEMENT CONTEMPLATED TO BE EXECUTED IN CONJUNCTION HEREWITH, OR ANY COURSE OF CONDUCT, COURSE OF DEALING, STATEMENTS (WHETHER VERBAL OR WRITTEN) OR ACTIONS OF EITHER PARTY. THIS PROVISION IS A MATERIAL INDUCEMENT FOR THE MORTGAGEE ENTERING INTO THIS AGREEMENT.

**IN WITNESS WHEREOF,** this Agreement has been signed by each of the undersigned as of the day and year first above written.

Signed, sealed and delivered
in the presence of:

"MORTGAGEE"

PLAINSCAPITAL BANK

By: _____
    Cory Newberry

_____

Its: Banking Officer

Print Name: _____

_____

Print Name: _____

THE STATE OF TEXAS    §
                   §
COUNTY OF DALLAS    §

    This instrument was acknowledged before me on the 24th day of December, 2008, by Cory Newberry, Banking Officer of Lender, on behalf of said Bank for the purposes and considerations therein expressed.

_____
Notary Public in and for
the State of Texas
Notary's Printed Name:

Lynn Womack
_____

My Commission Expires: 2·20·09

FIFTH NOTICE OF MORTGAGE AND NOTE
MODIFICATION AND RENEWAL AGREEMENT                    **PAGE – 3**

Signed, sealed and delivered
in the presence of:

&ldquo;MORTGAGOR&rdquo;

MIRACLE STRIP, L.L.C.

By: _____
    Robert L. Christensen

Its:  Managing Member

_____

Print Name: _____

_____

Print Name: _____

THE STATE OF FLORIDA    §
                               §
COUNTY OF OKALOOSA      §

     This instrument was acknowledged before me on the _22_ day of December, 2008, by Robert L. Christensen in his capacity as Managing Member of Miracle Strip, L.L.C. for the purposes and considerations therein expressed.

KIMBERLY S. MODLIN
MY COMMISSION # DD 370886
EXPIRES: February 5, 2009
Bonded Thru Notary Public Underwriters

_____
Notary Public in and for
The State of Florida
Notary's Printed Name: _Kimberly S. Modlin_
My Commission expires: _2-5-09_

FIFTH NOTICE OF MORTGAGE AND NOTE
MODIFICATION AND RENEWAL AGREEMENT

PAGE -- 4

Signed, sealed and delivered
in the presence of:

"GUARANTOR"

By: _____

Robert L. Christensen
(Individually)

Print Name: _____

Print Name: _____

THE STATE OF FLORIDA          §
                              §
COUNTY OF OKALOOSA            §

     This instrument was acknowledged before me on the 22 day of October, 2008, by Robert L. Christensen for the purposes and considerations therein expressed.

KIMBERLY S. MODLIN
MY COMMISSION # DD 370388
EXPIRES: February 5, 2009
Bonded Thru Notary Public Underwriters

Notary Public in and for
The State of Florida
Notary's Printed Name:
_Kimberly S. Modlin_
My Commission expires: 2-5-09

**FIFTH NOTICE OF MORTGAGE AND NOTE**
**MODIFICATION AND RENEWAL AGREEMENT**

PAGE – 5

1839109

DOC # 20090377403   B: 9895 P: 0844
07/07/2009 09:28:29 AM  Page 1 of 5
Rec Fee: $44.00  Doc Type: MOD
Deed Doc Tax: $0.00
Intangible Tax: $0.00
Mortgage Stamp: $0.00
Martha O. Haynie, Comptroller
Orange County, FL
MB - Ret To: PLAINSCAPITALBANK



RETURN TO:
PLAINSCAPITAL BANK
18111 Preston Road
Suite 220
Dallas, Texas 75252

Received BCOFFEY

JUL 2 3 2009

## SIXTH NOTICE OF MORTGAGE AND NOTE MODIFICATION
## AND RENEWAL AGREEMENT

This Sixth Notice of Mortgage and Note Modification and Renewal Agreement (the "Agreement"), made and entered into this 29th day of May 2009, by and between PlainsCapital Bank having an address of 18111 Preston Road, Suite 220, Dallas, Texas 75252 (herein called the "Mortgagee"), Miracle Strip, L.L.C. having an address of 364 Walton Way, Destin, Florida 32541 (herein called the "Mortgagor"), and Robert L. Christensen (referred to herein as "Guarantor").

## RECITALS:

A.     Heretofore, the aforementioned Mortgagor made and executed in favor of Mortgagee the following:

(i)     Promissory Note dated May 21, 2007 in the original principal balance of Three Million Two Hundred Thirteen Thousand One Hundred Sixty-One and no/100 Dollars ($3,213,161.00) (the "Note") as renewed, extended, and modified herein;

B.     In order to secure the payment of the aforementioned Loan Amount, the Mortgagor (among other things) made and executed the following:

(i)     Mortgage Deed and Security Agreement (herein referred to as the "**Mortgage**") recorded in Official Records Book 9317, page 1580.

(ii)    Notice of Mortgage and Note Modification and Renewal Agreement (the "First Modification") recorded in Official Records Book 9563, page 1474.

(iii)   Second Notice of Mortgage and Note Modification and Renewal Agreement (the "Second Modification") recorded in Official Records Book 9728, page 5936.

(iv)    Third Notice of Mortgage and Note Modification and Renewal Agreement (the "Third Modification") recorded in Official Records Book 9767, page 2983.

(v)     Fourth Notice of Mortgage and Note Modification and Renewal Agreement (the "Fourth Modification") recorded in Official Records Book 9799, page 7583.

(vi)    Fifth Notice of Mortgage and Note Modification and Renewal Agreement (the "Fifth Modification") recorded in Official Records Book 9841, page 8362.

All of the aforesaid recorded in the Public Records of ORANGE County, Florida. The indebtedness of Mortgagor to Mortgagee is further evidenced and governed by a Construction Loan Agreement dated May 21, 2007 (herein "**Loan Agreement**"). The real and personal property, mortgaged by the Mortgage and any modifications thereof is herein referred to as the "**Mortgaged Property.**"

C.     Mortgagor is the fee title owner of the Mortgaged Property and none of the Mortgaged Property has been transferred nor has any of the same been hypothecated or have liens otherwise been placed thereupon; and.

D.     Mortgagee is the owner and holder of the Mortgage and Loan Agreement as described above; and

E.     The Mortgagor and the Mortgagee have agreed to modify the amount of the Note;

**SIXTH NOTICE OF MORTGAGE AND NOTE**
**MODIFICATION AND RENEWAL AGREEMENT**                                      **PAGE – 1**



EXHIBIT

"H"

F.       The Mortgagor and Guarantor acknowledge that this Agreement confers a substantial benefit upon them and is supported by good and valuable consideration.

**NOW THEREFORE**, the parties do hereby modify and amend, for good, valuable and sufficient consideration, receipt of which is hereby acknowledged by the undersigned parties, the terms and provisions of the aforementioned Mortgage, Loan Agreement, and Note to the end that it is understood and agreed as follows:

1.       All of the RECITALS hereinabove set forth are by reference incorporated in and specifically made a part of this Agreement as fully as if set forth herein verbatim.

2.       The total principal indebtedness secured by the Mortgage is the sum of One Million Nine Hundred Fifty-Two Thousand Six Hundred Fifty-Seven and 24/100 Dollars ($1,952,657.24).

3.       There is no accrued but unpaid interest due and owing on the Note as of the date of the effective date of this Agreement.

4.       The maturity date of the Note remains November 21, 2009, on which date the entire unpaid principal balance and all accrued but unpaid interest on the Note shall be due and payable in full ("Maturity Date"). Borrower may at any time prepay the full amount or any part of the Note without the payment of any premium or fee, such payment being applied first to accrued and unpaid interest and the balance, if any, to principal.

5.       The terms of the Note, Mortgage, and Loan Agreement are only modified and renewed as specifically set forth herein, and term of the Note not specifically modified by this Agreement is hereby incorporated in and specifically made a part of this Agreement as fully as if set forth herein verbatim.

6.       Notwithstanding anything contained herein to the contrary:

         (a)      all of the Mortgaged Property described shall remain in all respects subject to the lien, charge, security interest and/or encumbrance of the Mortgage; and

         (b)      nothing herein contained or done pursuant hereto shall (i) release, adversely affect, impair or be construed to release, adversely affect or impair the lien, charge, security interest or encumbrance effectuated by the Mortgage or other documents executed in conjunction with the loan evidenced by the Note (herein collectively the "**Loan Documents**") or the priority thereof over other liens, charges, encumbrances or conveyances; (ii) release, adversely affect or impair the liability of any party or parties who may now or hereafter be liable under or on account of the Note, Mortgage or other Loan Documents; (iii) release, adversely affect or impair any grant or lien or security interest, representation in regard to and/or warranty of title heretofore made by the Mortgagor., all of which shall remain in full force and effect and shall inure to the benefit of the Mortgagee and are hereby reaffirmed and regranted and confirmed to the Mortgagee as modified hereby or simultaneously herewith.

7.       That all of the other stipulations, terms, provisions and covenants and agreements as contained in the aforesaid Mortgage, Note, Loan Agreement, and other Loan Documents shall remain in full force and effect except as herein provided to the contrary or modified in conjunction herewith.

8.       This Agreement shall be binding upon and shall inure to the benefit of the successors and assigns of the respective parties hereto.

9.       <u>Waiver of Right to Jury Trial.</u>   **MORTGAGOR AND MORTGAGEE HEREBY KNOWINGLY, VOLUNTARILY AND INTENTIONALLY WAIVE THE RIGHT EITHER MAY HAVE TO A TRIAL BY JURY IN RESPECT OF ANY LITIGATION BASED HEREON, OR ARISING OUT OF, UNDER OR IN CONNECTION WITH THIS AGREEMENT INCLUDING BUT NOT LIMITED TO ANY POST JUDGMENT ACTIONS AND ANY AGREEMENT CONTEMPLATED TO BE EXECUTED IN CONJUNCTION HEREWITH, OR ANY COURSE OF CONDUCT, COURSE OF DEALING, STATEMENTS (WHETHER VERBAL OR WRITTEN) OR ACTIONS OF EITHER PARTY. THIS PROVISION IS A MATERIAL INDUCEMENT FOR THE MORTGAGEE ENTERING INTO THIS AGREEMENT.**

**IN WITNESS WHEREOF,** this Agreement has been signed by each of the undersigned as of the day and year first above written.

Signed, sealed and delivered
in the presence of:

"MORTGAGEE"

PLAINSCAPITAL BANK

Print Name: *Emily E. Britt*

By: _____
     Cory Newberry

Its: Banking Officer

Print Name: *Linda Vo*

THE STATE OF TEXAS      §
                        §
COUNTY OF DALLAS        §

This instrument was acknowledged before me on the __8th__ day of June, 2009, by Cory Newberry, Banking Officer of Lender, on behalf of said Bank for the purposes and considerations therein expressed.

_____
Notary Public in and for
the State of Texas
Notary's Printed Name:
*Valerie Herrington*

My Commission Expires: 5/22/2010

VALERIE HERRINGTON
Notary Public, State of Texas
My Commission Expires
May 22, 2010

"MORTGAGOR"

MIRACLE STRIP, L.L.C.

By: _____
     Robert L. Christensen

Its: Managing Member

Print Name: *Ilini Allee*

Print Name: *Lynn Murphy*

SIXTH NOTICE OF MORTGAGE AND NOTE
MODIFICATION AND RENEWAL AGREEMENT

PAGE – 3

THE STATE OF FLORIDA §
§
COUNTY OF OKALOOSA §

    This instrument was acknowledged before me on the 4th day of June, 2009, by Robert L. Christensen in his capacity as Managing Member of Miracle Strip, L.L.C. for the purposes and considerations therein expressed.



_____
Notary Public in and for
The State of Florida
Notary's Printed Name: _____
My Commission expires: 2/5/2013

 

_____
Print Name: I lene Allen

_____
Print Name: Lynn Murphy

"GUARANTOR"

By: _____
      Robert L. Christensen
      (Individually)

 

THE STATE OF FLORIDA §
§
COUNTY OF OKALOOSA §

    This instrument was acknowledged before me on the 4th day of June, 2009, by Robert L. Christensen for the purposes and considerations therein expressed.

_____
Notary Public in and for
The State of Florida
Notary's Printed Name: _____
My Commission Expires: 2/5/2013

**SIXTH NOTICE OF MORTGAGE AND NOTE
MODIFICATION AND RENEWAL AGREEMENT**

PAGE -- 4

*205.05-4503*

RECEIVED BSTILLMAN   

JUN 15 2007

## GUARANTY AGREEMENT

**THIS GUARANTY AGREEMENT** (this "<u>Guaranty</u>") is executed as of May 21, 2007, by Robert L. Christensen, an individual and his heirs, personal representatives, permitted successors, and permitted assigns ("<u>Guarantor</u>"), whose address for notice purposes is 364 Walton Way, Destin, Florida 32541, for the benefit of **PlainsCapital Bank** ("Lender"), and its Affiliates (Lender and its Affiliates, together with their successors and assigns, herein sometimes collectively called "Beneficiary"). Unless otherwise defined herein, all capitalized terms have the meanings given to such terms in the Loan Agreement.

### INTRODUCTORY PROVISIONS:

A.    Miracle Strip, L.L.C. ("<u>Borrower</u>") and Lender have, as of even date hereof, executed a Loan Agreement.

B.    It is expressly understood among Borrower, Guarantor, and Lender that the execution and delivery of this Guaranty is a condition precedent to Lender's obligation to make loans or extend credit under the Loan Agreement and is an integral part of the transactions contemplated thereby.

C.    Guarantor is the sole managing member of Borrower and the extension of credit to Borrower is a substantial and direct benefit to Guarantor.

NOW, THEREFORE, for valuable consideration, the receipt and adequacy of which are hereby acknowledged, Guarantor hereby guarantees to Beneficiary the prompt payment and performance of the Guaranteed Obligations, this Guaranty being upon the following terms and conditions:

Section 1    <u>DEFINITIONS</u>.  As used in this Guaranty, the following terms have the following meanings:

<u>Affiliates</u>:  When used with respect to any Person, any other Person that, directly or indirectly, controls or is controlled by or is under common control with such Person.  For purposes of this definition "control" (including with correlative meanings, the terms "controlled by" and under "common control with"), with respect to any Person, means possession, directly or indirectly of the power to direct or cause the direction of the management and policies of such Person, whether through the ownership of voting securities, by contract or otherwise.

<u>Borrower</u>:  Miracle Strip, L.L.C. and without limitation, Borrower's successors and assigns (regardless of whether such successor or assign is formed by or results from any merger, consolidation, conversion, sale or transfer of assets, reorganization, or otherwise) including Borrower as a debtor-in-possession, and any receiver, trustee, liquidator, conservator, custodian, or similar party hereafter appointed for Borrower or all or substantially all of its assets pursuant to any liquidation, conservatorship, bankruptcy, moratorium, rearrangement, receivership, insolvency, reorganization, or similar Debtor Relief Laws (hereinafter defined) from time to time in effect.

<u>Debtor Relief Laws</u>: Title 11 of the United States Code, as now or hereafter in effect, or any other applicable law, domestic or foreign, as now or hereafter in effect, relating to bankruptcy, insolvency, liquidation, receivership, reorganization, arrangement or composition, extension or adjustment of debts, or similar laws affecting the rights of creditors.

<u>Dispute</u>:  Any action, dispute, claim or controversy of any kind, whether in contract or tort, statutory or common law, legal or equitable, now existing or hereafter arising under or in connection with, or in any way pertaining to, this Guaranty and each other document, contract and instrument required hereby or now or hereafter delivered to Lender in connection herewith, or any past, present or future extensions of credit and other activities, transactions or obligations of any

GUARANTY AGREEMENT                                                            PAGE – 1

**EXHIBIT**

tabbies "I"

kind related directly or indirectly to any of the foregoing documents, including without limitation, any of the foregoing arising in connection with the exercise of any self-help, ancillary or other remedies pursuant to any of the foregoing documents.

Guaranteed Indebtedness: All (i) "Obligations", as defined in the Loan Documents, including without limitation any and all pre- and post-maturity interest thereon, including without limitation post-petition interest and expenses (including attorneys' fees), if the Borrower is the debtor in a bankruptcy proceeding under the Debtor Relief Laws, whether or not allowed under any Debtor Relief Law, (ii) indebtedness, obligations and liabilities of Borrower to Beneficiary, or any or some of them, of any kind or character, now existing or hereafter arising, whether direct, indirect, related, unrelated, fixed, contingent, liquidated, unliquidated, joint, several or joint and several, and regardless of whether such indebtedness, obligations and liabilities may, prior to their acquisitions by Beneficiary, or any or some of them, be or have been payable to or in favor of a third-party and subsequently acquired by Beneficiary, or any or some of them (it being contemplated that Beneficiary, or any or some of them, may make such acquisitions from third-parties), including without limitation all indebtedness, obligations and liabilities of Borrower to Beneficiary, or any or some of them, now existing or hereafter arising by note, draft, acceptance, guaranty, endorsement, letter of credit, assignment, purchase, overdraft, discount, indemnity agreement or otherwise, (iii) obligations of Borrower to any Beneficiary under any documents evidencing, securing, governing and/or pertaining to all or any part of the indebtedness described in (i) and (ii) above, (iv) costs and expenses incurred by any Beneficiary in connection with the collection and administration of all or any part of the indebtedness and obligations described in (i), (ii) and (iii) above or the protection or preservation of, or realization upon, the collateral securing all or any part of such indebtedness and obligations, including without limitation all reasonable attorneys' fees, and (v) renewals, extensions, modifications and rearrangements of the indebtedness and obligations described in (i), (ii), (iii) and (iv) above.

Guaranteed Obligations:   The Guaranteed Indebtedness and the Guaranteed Performance Obligations.

Guaranteed Performance Obligations: All of the obligations of Borrower and any Guarantor under the Loan Documents other than an obligation to pay money.

Loan Agreement: That certain Loan Agreement dated as of May 21, 2007, as renewed, extended, restated, amended, or replaced from time to time.

Person:  Any individual, corporation, partnership, joint venture, limited liability company or partnership (general or limited) association, trust, unincorporated association, joint stock company, government, municipality, political subdivision or agency, or other entity.

Section 2     PAYMENT. Guarantor hereby unconditionally and irrevocably guarantees to Beneficiary the punctual payment when due, whether by lapse of time, by acceleration of maturity, or otherwise, and at all times thereafter, of the Guaranteed Indebtedness. This Guaranty covers the Guaranteed Indebtedness, whether presently outstanding or arising subsequent to the date hereof, including all amounts advanced by any Beneficiary in stages or installments. The guaranty of Guarantor as set forth in this Section 2 is a continuing guaranty of payment and not a guaranty of collection. Guarantor acknowledges and agrees that Guarantor may be required to pay and perform the Guaranteed Indebtedness in full without assistance or support from Borrower or any other party. Guarantor agrees that if all or any part of the Guaranteed Indebtedness shall not be punctually paid when due, whether on the scheduled payment date, by lapse of time, by acceleration of maturity or otherwise, Guarantor shall, immediately upon demand by a Beneficiary, pay the amount due on the Guaranteed Indebtedness to such Beneficiary at Beneficiary's address as set forth herein. Such demand(s) may be made at any time coincident with or after the time

GUARANTY AGREEMENT                                                              PAGE – 2

for payment of all or part of the Guaranteed Indebtedness, and may be made from time to time with respect to the same or different items of Guaranteed Indebtedness. Such demand shall be made, given and received in accordance with the notice provisions hereof.

Section 3    PERFORMANCE. Guarantor hereby unconditionally and irrevocably guarantees to Beneficiary the timely performance of the Guaranteed Performance Obligations. If any of the Guaranteed Performance Obligations of Borrower are not satisfied or complied with in any respect whatsoever, and without the necessity of any notice from a Beneficiary to Guarantor, Guarantor agrees to indemnify and hold Beneficiary harmless from any and all loss, cost, liability or expense that Beneficiary may suffer by any reason of any such non-performance or non-compliance. The obligations and liability of Guarantor under this Section 3 shall not be limited or restricted by the existence of, or any terms of, the guaranty of payment under Section 2 of this Guaranty.

Section 4    PRIMARY LIABILITY OF GUARANTOR.

(1)    This Guaranty is an absolute, irrevocable and unconditional guaranty of payment and performance. Guarantor is and shall be jointly and severally liable for the payment and performance of the Guaranteed Obligations, as set forth in this Guaranty, as a primary obligor.

(2)    In the event of default in payment or performance of the Guaranteed Obligations, or any part thereof, when such Guaranteed Obligations become due, whether by its terms, by acceleration, or otherwise, Guarantor shall promptly pay the amount due thereon to Beneficiary without notice or demand, of any kind or nature, in lawful money of the United States of America or perform the obligations to be performed hereunder, and it shall not be necessary for any Beneficiary in order to enforce such payment and performance by Guarantor first, or contemporaneously, to institute suit or exhaust remedies against Borrower or others liable on the Guaranteed Obligations, or to enforce any rights, remedies, powers, privileges or benefits of any Beneficiary against any Collateral, any Additional Collateral or any other security or collateral which shall ever have been given to secure the Guaranteed Obligations.

(3)    Suit may be brought or demand may be made against all parties who have signed this Guaranty or any other guaranty in favor of Beneficiary covering all or any part of the Guaranteed Obligations, or against any one or more of them, separately or together, without impairing the rights of any Beneficiary against any party hereto. Any time that a Beneficiary is entitled to exercise its rights or remedies hereunder, such Beneficiary may in its discretion elect to demand payment and/or performance. If a Beneficiary elects to demand performance, it shall at all times thereafter have the right to demand payment until all of the Guaranteed Obligations have been paid and performed in full. If a Beneficiary elects to demand payment, it shall at all times thereafter have the right to demand performance until all of the Guaranteed Obligations have been paid and performed in full.

Section 5    OTHER GUARANTEED DEBT. If Guarantor becomes liable for any indebtedness owing by Borrower to Beneficiary, or any or some of them, by endorsement or otherwise, other than under this Guaranty, such liability shall not be in any manner impaired or affected hereby, and the rights and remedies hereunder shall be cumulative of any and all other rights and remedies that Beneficiary may ever have against Guarantor. The exercise by Beneficiary of any right or remedy hereunder or under any other instrument, or at law or in equity, shall not preclude the concurrent or subsequent exercise of any other right or remedy by such Beneficiary or any other Beneficiary.

Section 6    SUBROGATION. Until the Guaranteed Obligations have been paid, in full, Guarantor hereby covenants and agrees that it shall not assert, enforce, or otherwise exercise (a) any right of subrogation to any of the rights, remedies or liens of Beneficiary or any other beneficiary against Borrower or its Affiliates or any other guarantor of the Guaranteed Obligations or any collateral or other security, or (b) unless such rights are expressly made subordinate to the Guaranteed Obligations (in form and upon terms acceptable to Lender) and the rights or

GUARANTY AGREEMENT                                                          PAGE – 3

remedies of Beneficiary under this Guaranty and the Loan Documents, any right of recourse, reimbursement, contribution, indemnification, or similar right against Borrower or its Affiliates or any other guarantor of all or any part of the Guaranteed Obligations.

Section 7    SUBORDINATED DEBT.  All principal of and interest on all indebtedness, liabilities, and obligations of Borrower or its Affiliates to Guarantor (the "Subordinated Debt") now or hereafter existing, due or to become due to Guarantor, or held or to be held by Guarantor, whether created directly or acquired by assignment or otherwise, and whether evidenced by written instrument or not, shall be expressly subordinated to the Guaranteed Obligations.  Until such time as the Guaranteed Obligations is paid and performed in full and all commitments to lend under the Loan Documents have terminated, Guarantor agrees not to receive or accept any payment from Borrower with respect to the Subordinated Debt at any time an Event of Default has occurred and is continuing; and, in the event Guarantor receives any payment on the Subordinated Debt in violation of the foregoing, Guarantor will hold any such payment in trust for Beneficiary and forthwith turn it over to Beneficiary in the form received, to be applied to the Guaranteed Obligations.

Section 8    WAIVERS.  Guarantor waives (a) any right to revoke this Guaranty with respect to future indebtedness; (b) any right to require any Beneficiary to do any of the following before Guarantor is obligated to pay the Guaranteed Obligations or before any Beneficiary may proceed against Guarantor: (i) sue or exhaust remedies against Borrower and other guarantors or obligors, (ii) sue on an accrued right of action in respect of any of the Guaranteed Obligations or bring any other action, exercise any other right, or exhaust all other remedies, or (iii) enforce rights against Borrower's assets or the collateral pledged by Borrower to secure the Guaranteed Obligations; (c) any right relating to the timing, manner, or conduct of such Beneficiary's enforcement of rights against Borrower's assets or the collateral pledged by Borrower to secure the Guaranteed Obligations; (d) if Guarantor and Borrower (or a third-party) have each pledged assets to secure the Guaranteed Obligations, any right to require any Beneficiary to proceed first against the other collateral before proceeding against collateral pledged by Guarantor; (e) except as expressly required hereby, promptness, diligence, notice of any default under the Guaranteed Obligations, notice of acceleration or intent to accelerate, demand for payment, notice of acceptance of this Guaranty, presentment, notice of protest, notice of dishonor, notice of the incurring by Borrower of additional indebtedness, notice of any suit or other action by any Beneficiary against Borrower or any other Person, any notice to any party liable for the obligation which is the subject of the suit or action, and all other notices and demands with respect to the Guaranteed Obligations and this Guaranty, (f) each of the foregoing rights or defenses regardless whether they arise under (i) Section 34.01 et seq. of the Texas Business and Commerce Code, as amended, (ii) Section 17.001 of the Texas Civil Practice and Remedies Code, as amended, (iii) Rule 31 of the Texas Rules of Civil Procedure, as amended, (iv) common law, in equity, under contract, by statute, or otherwise, and (g) any and all rights under Sections 51.003, 51.004 and 51.005 of the Texas Property Code, as amended.

Section 9    INSOLVENCY.  Should Guarantor become insolvent, or fail to pay Guarantor's debts generally as they become due, or voluntarily seek, consent to, or acquiesce in the benefit or benefits of any Debtor Relief Law, or become a party to (or be made the subject of) any proceeding provided for by any Debtor Relief Law (other than as a creditor or claimant) that could suspend or otherwise adversely affect the rights and remedies of Beneficiary granted hereunder, then, in any such event, the Guaranteed Obligations shall be, as between Guarantor and Beneficiary, a fully matured, due, and payable obligation of Guarantor to Beneficiary (without regard to whether Borrower is then in default under the Loan Agreement or whether the Obligations, or any part thereof is then due and owing by Borrower to Beneficiary), payable in full by Guarantor to Beneficiary upon demand, which shall be the estimated amount owing in respect of the contingent claim created hereunder.

Section 10    TERMINATION.  Guarantor's obligations hereunder shall remain in full force and effect until all commitments to lend under the Loan Documents have terminated, and the Guaranteed Obligations have been paid in full.  If at any time any payment of the principal of or interest or any other amount payable by Borrower under the Loan Documents is rescinded or must be otherwise restored or returned upon the insolvency, bankruptcy, or

GUARANTY AGREEMENT                                                PAGE – 4

reorganization of Borrower or otherwise, Guarantor's obligations hereunder with respect to such payment shall be reinstated as though such payment had been due but not made at such time.

Section 11    REPRESENTATIONS AND WARRANTIES.  Guarantor represents and warrants as follows:

(1)     Guarantor has the power and authority and legal right to execute, deliver, and perform its obligations under this Guaranty and this Guaranty constitutes the legal, valid, and binding obligation of Guarantor, enforceable against Guarantor in accordance with its terms, except as limited by bankruptcy, insolvency, or other laws of general application relating to the enforcement of creditor's rights.

(2)     The execution, delivery, and performance by Guarantor of this Guaranty do not and will not violate or conflict with any law, rule, or regulation or any order, writ, injunction, or decree of any court, governmental authority or agency, or arbitrator and do not and will not conflict with, result in a breach of, or constitute a default under, or result in the imposition of any lien upon any assets of Guarantor pursuant to the provisions of any indenture, mortgage, deed of trust, security agreement, franchise, permit, license, or other instrument or agreement to which Guarantor or its properties are bound.

(3)     No authorization, approval, or consent of, and no filing or registration with, any court, governmental authority, or third party is necessary for the execution, delivery, or performance by Guarantor of this Guaranty or the validity or enforceability thereof.

(4)     Guarantor has, independently and without reliance upon any Beneficiary and based upon such documents and information as Guarantor has deemed appropriate, made its own analysis and decision to enter into this Guaranty, and Guarantor has adequate means to obtain from Borrower on a continuing basis information concerning the financial condition and assets of Borrower, and Guarantor is not relying upon any Beneficiary to provide (and no Beneficiary shall have duty to provide) any such information to Guarantor either now or in the future.

(5)     The value of the consideration received and to be received by Guarantor is reasonably worth at least as much as the liability and obligation of Guarantor hereunder, and such liability and obligation may reasonably be expected to benefit Guarantor directly or indirectly.

Section 12    COVENANTS.  So long as this Guaranty remains in full force and effect, Guarantor shall, unless Beneficiary shall otherwise consent in writing:

(1)     Furnish to Beneficiary written notice of the occurrence of any Default or Event of Default promptly upon obtaining knowledge thereof.

(2)     Furnish to Beneficiary such additional information concerning Guarantor, Borrower or any other Person under the control of Guarantor as Beneficiary may request.

(3)     Obtain at any time and from time to time all authorizations, licenses, consents or approvals as shall now or hereafter be necessary or desirable under all applicable laws or regulations or otherwise in connection with the execution, delivery and performance of this Guaranty and will promptly furnish copies thereof to Beneficiary.

Section 13    LOAN AGREEMENT.  The Loan Agreement, and all of the terms thereof, are incorporated herein by reference, the same as if stated verbatim herein, and Guarantor agrees that Beneficiary may exercise any and all rights granted to it under the Loan Agreement and the other Loan Documents without affecting the validity or enforceability of this Guaranty.

GUARANTY AGREEMENT                                                    PAGE – 5

SECTION 14    SETOFF RIGHTS. Beneficiary shall have the right to set off and apply against this Guaranty or the Guaranteed Obligations or both, at any time and without notice to Guarantor, any and all deposits (general or special, time or demand, provisional or final) or other sums at any time credited by or owing from any Beneficiary to Guarantor whether or not the Guaranteed Obligations is then due and irrespective of whether or not such Beneficiary shall have made any demand under this Guaranty. As security for this Guaranty and the Guaranteed Obligations, Guarantor hereby grants Beneficiary a security interest in all money, instruments, certificates of deposit, and other property of Guarantor now or hereafter held by Beneficiary, including, without limitation, property held in safekeeping. In addition to Beneficiary' right of setoff and as further security for this Guaranty and the Guaranteed Obligations, Guarantor hereby grants Beneficiary a security interest in all deposits (general or special, time or demand, provisional or final) and all other accounts of Guarantor now or hereafter on deposit with or held by Beneficiary or any or some of them and all other sums at any time credited by or owing from each Beneficiary to Guarantor. The rights and remedies of Beneficiary hereunder are in addition to other rights and remedies (including, without limitation, other rights of setoff) which Beneficiary may have.

SECTION 15    TIME OF ESSENCE. Time shall be of the essence in this Guaranty Agreement with respect to all of Guarantor's obligations hereunder.

SECTION 16    GOVERNING LAW. This Guaranty is executed and delivered as an incident to a lending transaction negotiated and consummated in Dallas County, Texas, and shall be governed by and construed in accordance with the laws of the State of Texas.

SECTION 17    NO ORAL AGREEMENTS. THIS GUARANTY REPRESENTS THE FINAL AGREEMENT BETWEEN THE PARTIES AND MAY NOT BE CONTRADICTED BY EVIDENCE OF PRIOR, CONTEMPORANEOUS, OR SUBSEQUENT ORAL AGREEMENTS BY THE PARTIES. THERE ARE NO UNWRITTEN ORAL AGREEMENTS BETWEEN THE PARTIES.

EXECUTED as of the first date herein set forth.

GUARANTOR:

Robert L. Christensen

GUARANTY AGREEMENT

IN THE CIRCUIT COURT OF THE
NINTH JUDICIAL CIRCUIT, IN AND
FOR ORANGE COUNTY, FLORIDA

CASE NO.: 09-CA-13518
DIVISION: 33

PLAINSCAPITAL BANK,

      Plaintiff,

vs.

MIRACLE STRIP, LLC, a Texas
limited liability company, and
DAMAGE CONTROL, INC., a Florida
corporation,

      Defendants
_____/

## FINAL JUDGMENT OF MORTGAGE FORECLOSURE

THIS CAUSE came to be heard on Plaintiff's Motion for Entry of Summary Final Judgment of Foreclosure. The Court has considered the pleadings, as well as the affidavits submitted. The Court finds that it has jurisdiction of the subject matter hereof and the parties hereto, that there are no material facts in dispute; and, being otherwise fully advised in the premises, the Court finds that plaintiff is entitled to summary final judgment of foreclosure as a matter of law. Accordingly, it is hereby,

ORDERED AND ADJUDGED that:

1. Plaintiff is due the following from Defendant Miracle Strip under the Note, which shall bear interest as provided by law:

EXHIBIT

"J"

a) As unpaid principal of the indebtedness
   agreed to be paid in the mortgage herein
   foreclosed and the note secured
   thereby                                    $ 1,952,657.24

b) Accrued interest through 7/1/09
   to 4/7/10 (per diem $347.73)               $    106,204.29

c) Title Search & Examination                 $       275.00

e) Filing fee                                 $       320.00

f) Recording fee                              $         9.00

d) Service of Process                         $       105.00

                              Subtotal        $ 2,059,390.53

         Plaintiff's Attorney's Fees    $    5,735.00

                              Total     $ 2,065,125.53   04/08/1

that shall bear interest at the legal rate as prescribed by law.

Plaintiff may also recover such further costs as may be incurred by

the Plaintiff in this action, including, but not limited to, the

sale fee and publication of the Notice of Sale, and any advances

made by the Plaintiff subsequent to the date of the Affidavit of

Indebtedness which cost or advances are proper under the terms of

the note and mortgage foreclosed herein.

        2.   Plaintiff holds a lien for the total sum set forth

in paragraph 1 above superior to any claim or estate of all the

Defendants herein, and any persons claiming by, under or through

2

the Defendants, on the following property in Orange County, Florida:

> Lot 1, less the North 25 feet thereof, WM. H. ARTHUR'S REPLAT OF LOTS 2, 3 & 4 OF REPLAT OF BUNNELL'S EDGEWATER TERRACE SUBDIVISION, according to the plat thereof, as recorded in Plat Book Q, Page 27, Public Records of Orange County, Florida, together with all its present or future improvements, appurtenances, furnishings, fixtures, inventory, equipment; and their associated proceeds, profits, issues, accounts, documents, instruments, general intangibles, chattel paper and contract rights; and together with all articles of personal property now or hereafter used in or about the improvements which are necessary to the complete and comfortable use and occupancy of the same for the purpose or purposes for which erected, and all building materials and equipment now or hereafter delivered to the above referenced real property and intended to be installed thereon or in or upon the improvements or used in the development of the above referenced real property, and all plans, drawings, surveys, appraisals, books, records and all other documents of any type or nature used or intended to be used in the development of the above referenced real property (all of such articles of personal property, building materials, equipment and documents being hereafter sometimes collectively referred to as the "Personal Property); but not any consumer goods unless purchased with the proceeds of the loan reflected by the Note.

3.   If the total sum set forth in paragraph 1 with interest at the interest rate prescribed by law and all costs of this action and proper advances pursuant to paragraph 1 accruing subsequent to this judgment are not paid, the Clerk of this Court shall sell the property at public sale to the highest bidder for cash, except as

set forth hereafter, on ___MAY 24___, 2010, at 11:00 a.m., in Room 350 of the Orange County Courthouse, 425 North Orange Avenue, Orlando, Florida 32801, in accordance with Chapter 45, Florida Statutes; provided, however, that such sale shall not be held in the absence of plaintiff's attorney or other representative.

4.   IF THIS PROPERTY IS SOLD AT PUBLIC AUCTION, THERE MAY BE ADDITIONAL MONEY FROM THE SALE AFTER PAYMENT OF PERSONS WHO ARE ENTITLED TO BE PAID FROM THE SALE PROCEEDS PURSUANT TO THIS FINAL JUDGMENT.

IF YOU ARE A SUBORDINATE LIENHOLDER CLAIMING A RIGHT TO FUNDS REMAINING AFTER THE SALE, YOU MUST FILE A CLAIM WITH THE CLERK NO LATER THAN 60 DAYS AFTER THE SALE.  IF YOU FAIL TO FILE A CLAIM, YOU WILL NOT BE ENTITLED TO ANY REMAINING FUNDS.

IF YOU ARE THE PROPERTY OWNER, YOU MAY CLAIM THESE FUNDS YOURSELF.  YOU ARE NOT REQUIRED TO HAVE A LAWYER OR ANY OTHER REPRESENTATION AND YOU DO NOT HAVE TO ASSIGN YOUR RIGHTS TO ANYONE ELSE IN ORDER FOR YOU TO CLAIM ANY MONEY TO WHICH YOU ARE ENTITLED. PLEASE CHECK WITH THE CLERK OF THE COURT, LYDIA GARDNER (407) 836-2055, WITHIN TEN (10) DAYS AFTER THE SALE TO SEE IF THERE IS ADDITIONAL MONEY FROM THE FORECLOSURE SALE THAT THE CLERK HAS IN THE REGISTRY OF THE COURT.

IF YOU DECIDE TO SELL YOUR HOME OR HIRE SOMEONE TO HELP YOU CLAIM THE ADDITIONAL MONEY, YOU SHOULD READ VERY CAREFULLY ALL PAPERS YOU ARE REQUIRED TO SIGN, ASK SOMEONE ELSE, PREFERABLY AN

4

ATTORNEY WHO IS NOT RELATED TO THE PERSON OFFERING TO HELP YOU, TO MAKE SURE THAT YOU UNDERSTAND WHAT YOU ARE SIGNING AND THAT YOU ARE NOT TRANSFERRING YOUR PROPERTY OR THE EQUITY IN YOUR PROPERTY WITHOUT THE PROPER INFORMATION. IF YOU CANNOT AFFORD TO PAY AN ATTORNEY, YOU MAY CONTACT LEGAL AID SOCIETY OF THE ORANGE COUNTY BAR ASSOCIATION, INC., 100 E. ROBINSON STREET, ORLANDO, FLORIDA 32801, 407-841-8310, TO SEE IF YOU QUALIFY FINANCIALLY FOR THEIR SERVICES. IF THEY CANNOT ASSIST YOU, THEY MAY BE ABLE TO REFER YOU TO A LOCAL BAR REFERRAL AGENCY OR SUGGEST OTHER OPTIONS. IF YOU CHOOSE TO CONTACT LEGAL AID SOCIETY OF THE ORANGE COUNTY BAR ASSOCIATION, INC. FOR ASSISTANCE, YOU SHOULD DO SO AS SOON AS POSSIBLE AFTER RECEIPT OF THIS NOTICE.

5. If Plaintiff is the purchaser, the Clerk shall credit Plaintiff's bid with the total sum set forth in paragraph 1 above plus interest and costs accruing subsequent to this judgment or such part of it as is necessary to pay the bid in full. If prior to the sale, Plaintiff shall be required to advance any monies pursuant to the provisions
hereof, then Plaintiff or its attorneys shall so certify to the Clerk of this Court, and the amount due to Plaintiff as set forth in paragraph 1 hereof shall be increased by the amount of such advances without further order of the Court. If prior to sale, Defendant Miracle Strip tenders payment pursuant to a bankruptcy plan or forbearance agreement, then Plaintiff or its Attorneys,

shall so certify to the Clerk of this Court that the amount due to Plaintiff as set forth in Paragraph 1 hereof shall be credited by the amount of such tendered payments without further order of this Court. If Plaintiff is successful bidder at the sale, Plaintiff's rights as such may be assigned to a third party and, in that event, the Clerk of this Court is hereby ordered and directed to issue the Certificate of Title to Plaintiff's assignee upon application of Plaintiff and without further Order of this Court.

6.   On filing the Certificate of Title the Clerk shall distribute the proceeds of the sale, so far as they are sufficient, by paying: first, all of Plaintiff's costs; second, documentary stamps affixed to the certificate unless Plaintiff is not successful bidder in which event the successful bidder shall pay the cost of said documentary stamps in addition to the amount bid; third, Plaintiff's attorneys' fees; fourth, the total sum due to Plaintiff less the items paid plus interest at the rate set forth from this date to the date of the sale; said sum to be paid to the attorney of record for the Plaintiff; and by retaining any amount remaining pending the further order of this Court.

7.   On the filing of the Certificate of Sale by the Clerk of the Court, the Defendants and all persons claiming under or against them since the filing of the Notice of Lis Pendens are foreclosed of all estate or claim in the property and the purchaser at the sale shall be let into possession of the property. If the

United States of America is a Defendant herein, it shall have the right of redemption provided by 28 U.S.C. 2410(c) for the period provided therein, running from tile date of Certificate of Sale.

8.   If the Plaintiff is the purchaser at the sale, then, upon confirmation of the sale, whether by the Clerk filing the Certificate of Title herein or by order of the Court ruling upon objections to the sale, the said Plaintiff may permanently withdraw from the court file the original mortgage, the original promissory note and the original assignments of mortgage if any, and the photocopies of same attached to the Complaint shall hereafter be and stand in lieu thereof.

9.   If Plaintiff is the purchaser at the sale, Plaintiff, its heirs, representatives, successors or assigns, shall be placed in immediate possession of the afore described premises. In the event the Defendants fail to vacate said premises within 10 days of the date of the foreclosure sale as provided above, upon the issuance of the Certificate of Title the clerk of courts is hereby directed to issue a Writ of Possession for subject premises.

10.   The Court finds, based upon the affidavits presented and upon inquiry of counsel for the plaintiff, that 18.20 hours at an hourly rate of $225.00 and 8.20 hours at an hourly rate of $200.00 were reasonably expended by plaintiff's counsel and that these rates are appropriate. PLAINTIFF'S COUNSEL REPRESENTS THAT THE ATTORNEY FEE AWARDED DOES NOT EXCEED ITS CONTRACT FEE WITH THE PLAINTIFF. The Court finds that there are no reduction or

7

enhancement factors for consideration by the Court pursuant to Florida Patient's Compensation Fund v. Rowe, 472 So.2d 1145 (Fla. 1981). Jurisdiction of this action is retained to enter such further orders as are proper including, without limitation, deficiency judgments, except where a discharge is applicable or where service of process was not personally obtained.

**DONE AND ORDERED** at Orlando, Orange County, Florida, this _____ day of April, 2010.

Original Order Signed

APR 19 2010

JOSE R. RODRIGUEZ
~~Circuit Court Judge~~

_____
Jose R. Rodriguez
Circuit Court Judge

Copies to:

Reed W. Grimm, Esquire
Attorney for PlainsCapital Bank

C. LeDon Anchors, Esquire
Attorney for Miracle Strip, LLC

George K. Archer, Jr.
Registered Agent for Damage Control, Inc.

IN THE CIRCUIT COURT OF THE
NINTH JUDICIAL CIRCUIT, IN AND
FOR ORANGE COUNTY, FLORIDA

CASE NO.: 09-CA-13518
DIVISION: 33

**PLAINSCAPITAL BANK,**

      Plaintiff,

vs.

**MIRACLE STRIP, LLC,** a Texas
limited liability company, and
**DAMAGE CONTROL, INC.,** a Florida
corporation,

      Defendants

_____/

DOC# 20100344153 B: 10059 P: 9409
06/15/2010 08:22:36 AM Page 1 of 2
Rec Fee: $0.00
Deed Doc Tax: $0.70
Intangible Tax: $0.00
Mortgage Stamp: $0.00
Martha O. Haynie, Comptroller
Orange County, FL
IO - Ret To: CLERK OF COURT - CIVIL

## CERTIFICATE OF TITLE

The undersigned, Lydia Gardner, Clerk of the Court, hereby
certifies that a certificate of sale has been executed and filed in
this action on _May 24, 2010_ , for the property described
herein and that no objections to the sale have been filed within
the time allowed for filing objections:

The following property in Orange County, Florida:

Lot 1, less the North 25 feet thereof, WM. H. ARTHUR'S
REPLAT OF LOTS 2, 3 & 4 OF REPLAT OF BUNNELL'S EDGEWATER
TERRACE SUBDIVISION, according to the plat thereof, as
recorded in Plat Book Q, Page 27, Public Records of
Orange County, Florida, together with all its present or
future improvements, appurtenances, furnishings,
fixtures, inventory, equipment; and their associated
proceeds, profits, issues, accounts, documents,
instruments, general intangibles, chattel paper and
contract rights; and together with all articles of
personal property now or hereafter used in or about the
improvements which are necessary to the complete and
comfortable use and occupancy of the same for the purpose
or purposes for which erected, and all building materials
and equipment now or hereafter delivered to the above
referenced real property and intended to be installed
thereon or in or upon the improvements or used in the
development of the above referenced real property, and
all plans, drawings, surveys, appraisals, books, records



**EXHIBIT**

"K"

and all other documents of any type or nature used or intended to be used in the development of the above referenced real property (all of such articles of personal property, building materials, equipment and documents being hereafter sometimes collectively referred to as the "Personal Property); but not any consumer goods unless purchased with the proceeds of the loan reflected by the Note.

was sold to:

   PlainsCapital Bank, 2323 Victory Avenue, Suite 1400, Dallas, Texas 75219.

   WITNESS my hand and the seal of the Court this ___8___ day of __June__, 2010.

                                    Lydia Gardner
                                    Clerk of the Circuit Court

                          By: _____
                                    Deputy Clerk

Copies to:

Reed W. Grimm, Esquire
50 North Laura Street, Suite 3500
Jacksonville, Florida 32202
(904) 356-0700
(904) 356-3224 (Facsimile)
_____

2